THE TERRITORY OF NEW MEXICO, Appellee, v. EDWARD M.
KELLY, Appellant.

*February 1, 1882.*

CRIMINAL LAW; PRACTICE. (1) *Admissibility of affidavits and counter-affidavits on application for change of venue.*

SAME. (2) *Change of venue: Requisites of affidavits upon applying for.*

SAME. (3) *Continuance discretionary with court.*

SAME. (4) *Jury: List of talesmen need not be furnished prisoner in advance.*

SAME. (5) *Trial: Rule as to removing irons from prisoner.*

SAME. (6) *Trial: Irons should be removed from prisoner while jury is being made up.*

SAME. (7) *Trial: Failure to remove irons from prisoner, review by supreme court.*

SAME. (8) *Review: Bill of exceptions too meagre.*

SAME. (9) *Evidence of threats, admissibility of.*

1. In a criminal case, on an application for a change of venue under Gen. Laws N. M., Prince ed., p. 117, sec. 17, if the proper affidavit is made by the party moving for a change of venue and is supported by the affidavits of two or more disinterested persons, such affidavits are to be considered as conclusive as to the county in which the suit is then pending, and the court has no discretion to refuse such application so far as changing the venue from that county. In determining, however, which is the nearest county thereto, and whether the same be free from exceptions within the meaning of the statute, the affidavits on behalf of such moving party are not conclusive. These are questions the determination of which rests in the sound discretion of the presiding judge, and it is not only proper, but it is the duty of the judge to receive such evidence from whatever source as will satisfy his conscience in the exercise of his discretion. Counter-affidavits held admissible on exception being taken to the county to which it is proposed to send the cause to be tried.

2. The affidavit of the party moving for a change of venue as well as those in support of the same, in order to be conclusive as to the county in which the suit is then pending, must be positive in all material averments and not made on information and belief merely.

3. A motion for a continuance is addressed to the discretion of the court, whose ruling in the absence of a clear abuse of discretion is not reviewable.

Territory of New Mexico v. Kelly.

4. The "list of jurors summoned," which by Gen. Laws N. M., p. 288, sec. 20, is to be "given to the defendant in all capital cases twenty-four hours before the trial, and in all other cases before the jury is sworn, if required," refers to the regular panel summoned and accepted for the term, and does not include talesmen summoned to complete the trial jury after such regular panel has been exhausted.

5. A prisoner when brought to the bar of the court for trial, is entitled to have his irons removed before the trial commences, unless the court be of the opinion that their retention upon the limbs of the prisoner is a reasonable precaution to prevent an escape or to insure the safety of the by-standers and the orderly conduct of the prisoner.

6. The calling and examination of jurors is a part of the proceedings of a trial, and it is irregular to compel the prisoner at this stage of the trial to appear at the bar in irons for no better reason than that it would be inconvenient to remove them, or that their removal would cause a delay of a few hours in the trial.

7. When the record affirmatively discloses the fact that there was no reason whatever for placing shackles or manacles upon the prisoner against his protest while undergoing trial, a question of law arises which may be reviewed on appeal and the judgment reversed; but when the record discloses some valid or reasonable ground of apprehension that the prisoner may attempt to escape, or injure the by-standers, or the officers in charge, or will be otherwise disorderly or dangerous, it should be left entirely to the discretion of the trial court to determine whether the prisoner should be ironed or not; and when the record is silent as to whether there was or was not any valid excuse for retaining the irons upon the prisoner during the trial, the appellate court will presume that the court below exercised a sound and reasonable discretion in refusing to order the irons to be removed.

*Held*, In the present case, that had the irons remained on the prisoner during his trial or for any considerable portion thereof, the court would be compelled to reverse the judgment; but as it appeared from the record that they so remained but for an inconsiderable time while a few only of the jurors were being called and examined, and before any of them had been accepted and sworn, it was decided that the prisoner's rights of defense were not prejudicially affected thereby to an extent that will justify a reversal of the judgment on that ground.

8. An objection was made to testimony as to what occurred "on that day." The bill of exceptions did not state enough to show what day was meant. *Held*, that the court could not review a ruling upon such a detached, disconnected fact, evidence of which might or might not be admissible, according to the circumstances.

9.  Evidence of threats, though uncommunicated to the defendant, is competent.

Appeal from the District Court of San Miguel county. PRINCE, J.

The defendant, charged with the murder of one John Reardon in the month of October, 1880, was indicted and arraigned at the February term, 1881, of the district court held in and for the county of Santa Fe, and pleaded not guilty.   He filed a motion for a change of venue to the nearest county free from exception, declaring against the counties of Santa Fe, San Miguel and Mora.   This motion was resisted by the attorney-general, who filed a counter-affidavit, among others of the affiants to which were the foreman and various members of the grand jury finding the indictment against the defendant, alleging a belief that San Miguel county was free from the exception claimed by the defendant.   The court overruled and denied the motion, in so far as it applied to changing the venue beyond San Miguel county, to which county the cause was sent for trial.

At the succeeding (March) term of the district court held in and for San Miguel county, the defendant moved for a continuance of his cause until the next regular term the court, urging as a necessity therefor the absence of an important material witness, one Thompson, whose testimony, defendant alleged, by affidavit, could not be produced at the then present term of court, and without which he could not safely go to trial.   This motion was resisted by the attorney-general, and, although none of the facts which the defendant alleged could be proved by the witness, were admitted by the attorney-general, the motion was denied.   The defendant, subsequently, and during said March term, again moved the court to grant him a continuance, and alleged extraordinary efforts to find and communicate with said witness, who was then reputed to be in the Black Range, in this territory. This motion was also denied.

Territory of New Mexico v. Kelly.

This case was called for trial at 7.30 o'clock on the night of the last day but one of the term, and the prisoner brought into court shackled. The defendant, before trial, moved the court to have his shackles removed. This motion was denied and the impanelling of a jury directed to proceed. Seven jurors were accepted during the evening session, some of whom were summoned from the bystanders, or the county at large, before the regular panel was exhausted, and whose names had not been furnished to the defendant twenty-four hours before the trial. On the following day, prior to the incoming of the court, the shackles were removed from the defendant.

During the course of the trial, the defendant offered to show that after the shooting he was jumped upon, kicked, and otherwise abused, by the prosecuting witnesses, and that at the time of the shooting they (prosecuting witnesses) threatened to hang defendant. Also, that defendant had never had any difficulty prior to the killing charged in this case.

The defendant also offered to prove threats of the deceased prior to the difficulty. All of which evidence was ruled out by the court.

The jury found the defendant guilty of murder in the first degree.

The defendant moved for a new trial, which was denied. Defendant then moved an arrest of judgment, which was also denied.

*Caypless & Breeden* for appellant.

It was error for the court to receive a counter-affidavit on a motion for a change of venue: *Barrows v. The People*, 2 Ill., 121; *Baxter v. The People*, 2 Gil., 578; Gen. Laws N. M., Prince's ed., sec. 17, pp. 117, 118, "Shall."

The court erred to the prejudice of the defendant in changing the venue to the county of San Miguel, to which objection was made and shown to exist by appellant's affida-

vit: Gen. Laws N. M., Prince's ed., sec. 17, pp. 117, 118, "Free from exceptions."

The defendant's application for continuance at the February, 1881, term of the district court for Santa Fe county should have been granted: *People v. Diaz*, 6 Cal., 248; *People v. Dodge*, 28 Cal., 445, and cases there cited; *People v. Brown*, 46 Cal., 103.

The defendant was entitled to a complete list of jurors, who were to try him, twenty-four hours before the trial, and the court erred in permitting persons to be sworn and to sit as jurors whose names had not been so furnished the defendant: Gen. Laws N. M., Prince's ed., sec. 20, p. 228; Bishop on Crim. Proced., sec. 931, and cases there cited; *Woodside v. State*, 2 How. (Miss.), 655.

The defendant should have been relieved of his shackles before being brought to trial, and the judgment should be reversed for a failure so to do: *People v. Harrington*, 42 Cal., 165; *State v. King*, 1 Mo., 438; Bishop on Crim. Proced., sec. 955; *Lee v. State*, 51 Miss., 566.

Defendant was entitled to show that he was jumped upon, kicked and beaten by prosecuting witnesses, and the court erred in refusing to permit him so to prove, and also to prove that some of the prosecuting witnesses, at the time of the killing, threatened to hang the defendant.

The court erred in refusing to permit the defendant to prove that he never had any difficulty prior to the killing charged in this case.

The court erred in refusing to permit the defendant to prove threats by the deceased not communicated to the defendant: *People v. Scroggins*, 37 Cal., 676; *People v. Crowin*, 34 Cal., 192; *Stokes v. People*, 53 N. Y., 164; Whart. Crim. Ev., sec. 757, and cases there cited; Whart. Crim. Law, sec. 1027; *Holler v. State*, 37 Ind., 57; *State v. Turhin*, 77 N. C., 473; 93 U. S., 465; 19 Vt., 116; 16 Ill., 17.

Territory of New Mexico v. Kelly.

The court should have directed the jury to find the defendant not guilty.

The court should have given the instructions asked for by the defendant.

A new trial should have been allowed, and the court erred in refusing the same.

*William Breeden*, attorney-general, for the territory of New Mexico, appellee.

The defendant's application for a change of venue from Santa Fe county was granted; this was all he was entitled to.

The receiving of the affidavits presented in opposition, was in the discretion of the court, and the defendant was not prejudiced thereby.

An application for a continuance is addressed to the discretion of the court, and is not reviewable: 1 Gildersleeve, pp. 371, 372; 1 Bishop Crim. Proced., sec. 951, and numerous cases there cited.

The defendant was entitled only to a list of the jurors summoned to attend the term—which he received: Prince's Statutes, sec. 20, p. 288. He was only entitled to such list upon requiring the same. It does not appear that such list was required or applied for.

The defendant's shackles were removed before the trial commenced: 1 Bishop Crim. Proced., sec. 955, and cases there cited.

Threats by the deceased, in cases like this, are only admissible when there is a doubt as to which party was the aggressor, or commenced the assault: 19 Vt., 116; 93 U. S., 465; 16 Ill., 17. In this case there was no doubt or conflict of evidence on that point.

The defendant had a right to prove that he had previously been of a good reputation as a man of peace and good order, but evidence of particular facts, or that he had never before had a difficulty were not admissible: 1 Bishop Crim. Pro-

ced., sec. 1117; 2 Ind., 91; 57 N. H., 245; 74 N. C., 591; 119 Mass., 342; 4 Humphrey, 381; 76 N. C., 216.

The instructions asked for by the defendant were clearly improper.

The motion for a new trial was addressed to the discretion of the court, and its action in denying the same is not reviewable: 1 Bishop Crim. Proced., sec. 1274; 65 Ill., 17 to 24; 57 Ga., 482; 56 Ga., 84; 2 Texas Appeal, 46.

BRISTOL, Associate Justice : The material facts disclosed by the record are substantially as follows :

The appellant, Edward M. Kelly, was indicted for the crime of murder in the first degree, at the February term, 1881, of the district court of Santa Fe county, in the judicial district aforesaid ; and after being arraigned, and pleading not guilty, at the term aforesaid, the appellant made an affidavit for a change of venue from the county aforesaid to the nearest county free from exceptions. This affidavit, in addition to positive averments sufficient for a change of venue from Santa Fe county where the cause originated, contained the averment that the same objections existed in San Miguel county, and in several other counties specified. Counter-affidavits were received and read under objection and exception by the appellant as to the grounds of exception to San Miguel county, upon appellant's motion for a change of venue upon his said affidavit, which was supported by two other affiants. The court, upon all the affidavits under objection and exception by the appellant, ordered a change of venue to said San Miguel county, in the judicial district aforesaid. The then next succeeding term of the district court for said county of San Miguel commenced on the 7th day of March, 1881. On that day, at such term, the cause was set for trial the following Monday, the 14th day of March, 1881. On the sixteenth day of that month, the appellant made a motion for a continuance to the then next term, based on affidavits

made by him and by others on his behalf therefor. This motion was overruled, and such ruling excepted to the same day. On the last day but one of the term, at 30 minutes past 10 in the evening, the case was brought on for trial. The prisoner being brought before the court for trial, with shackles on his legs, he moved the court to have them removed, whereupon the sheriff having the prisoner in charge, informed the court, "That the irons were riveted on, and in order to remove them, the prisoner would have to be taken to a blacksmith's shop ; that no such shop was open at that hour, and he did not believe he could find a blacksmith ; and that even in the day time it would take quite a while." Thereupon the court directed the case to proceed without removing the irons, but ordered that before the jury was accepted and sworn the following day, the irons must be removed.

Thereupon several jurors (how many does not appear), were examined as to their qualifications to try the cause, and passed upon.

The next morning before any other proceedings in the case were had, or other jurors examined, or any juror was accepted or sworn, the irons were removed from the prisoner.

The regular panel of petit jurors being exhausted, except as to one Robert Oakley thereon, who, after being called, did not respond, and the sheriff, after being directed to find him, had reported that he could not be found, and neither party requiring an attachment for such absent juror, the regular panel was regarded by the court as exhausted, whereupon talesmen were brought into court for the purpose of completing the trial jury. The names of such talesmen were not furnished to the prisoner twenty-four hours before trial.

A trial jury was finally accepted and sworn. The appellant was tried and convicted of murder in the first degree. Motions for a new trial and in arrest of judgment were interposed, overruled and excepted to. Sentence and judgment

were pronounced and entered in the usual form upon the verdict.

Upon the foregoing proceedings, errors are assigned as follows:

*First.* That the court erred in receiving and considering counter-affidavits, as to appellant's exceptions to San Miguel county averred in his affidavit for a change of venue.

*Second.* That the court erred in ordering a change of venue to said county of San Miguel.

*Third.* That the court erred in overruling the motion for a continuance.

*Fourth.* That the court erred in permitting the appellant to be tried without being furnished, twenty-four hours before trial, with the names of talesmen summoned after the regular panel of the petit jurors had been exhausted.

*Fifth.* That the court erred in directing the parties to enter upon and proceed with the calling and examination of jurors to try the cause while the prisoner had his irons on, and after he had asked to have them removed.

Covering the first assignment of error in regard to change of venue, the statute provides, as follows: "The venue shall be changed in all cases, both civil and criminal, to the nearest county free from exceptions, when the judge is interested, or when the party moving for a change, shall make oath that he cannot have justice done him in the county in which the suit is then pending, setting forth the cause of such obstruction of justice, which oath must be supported by the additional oaths of at least two disinterested persons, provided that neither party shall be allowed to change the venue in the same case more than twice:" General Laws N. M., Prince's ed., 117, sec. 17. The construction we give to this statute is, that if the proper affidavit is made by the party moving for a change of venue, and supported by the affidavits of two or more disinterested persons, such affidavits are to be considered as conclusive as to the county in which

the suit is then pending, and that the court has no discretion to refuse such application, so far as changing the venue from that county. In determining, however, which is the nearest county thereto, and whether the same be free from exceptions within the meaning of the statute, the affidavits on behalf of such moving party, are not conclusive. These are questions, the determination of which rests in the sound discretion of the presiding judge, and it would be not only proper, but the duty of the judge to receive such evidence from whatever source as will satisfy his conscience in the exercise of his discretion.

The application of any other rule of construction would give to the party moving a change the power of preventing a trial altogether by raising exceptions to every county in the territory.

We will here take occasion to remark, that the affidavit of the moving party as well as those in support of the same, in order to be conclusive as to the county in which the suit is then pending, must be positive in all material averments, and not made on information and belief merely. In this respect the sufficiency of the supporting affidavits in this case is doubtful.

The court having granted a change of venue from the county in which the suit was then pending to the county of San Miguel, there was no error in receiving and considering counter-affidavits to exceptions to the latter county.

This disposes also of the second assignment of error. The overruling the motion for a continuance, which is the third assignment of error, was a matter addressed to the sound discretion of the court. The record does not disclose any such abuse of discretion under the circumstances as will justify the court in disturbing the judgment on that ground.

The statute covering the fourth assignment of error is as follows:

"A list of the jurors summoned shall be given to the

defendant in all capital cases twenty-four hours before the trial, and in all other cases before the jury is sworn, if required: ' Gen. Laws N. M., Prince's ed., 288, sec. 20."

The " list of the jurors summoned " within the meaning of this statute evidently refers to the regular panel summoned and accepted for the term, and does not include talesmen summoned to complete the trial jury after such regular panel has been exhausted.

The fifth assignment of error presents a question of more serious import. There can be no doubt that a prisoner, when brought to the bar of the court for trial, is entitled to have his irons removed before the trial commences, unless the court be of the opinion that their retention upon the limbs of the prisoner is a reasonable precaution to prevent an escape, or to insure the safety of the bystanders and the orderly conduct of the prisoner.

Neither can there be any doubt that the calling and examination of jurors to try a cause is a part—and to the prisoner at the bar a very important part—of the proceedings of a trial. It would be irregular at this stage of the trial to compel the prisoner to appear at the bar in irons for no better reason than that it would be inconvenient to remove them, or that their removal would cause a delay of a few hours in the trial.

In the case of the *People v. Harrington,* 42 Cal., 165, the defendant having been indicted for robbery, was brought before the court for trial with irons on his limbs. His counsel asked for their removal, which was denied, the court stating that the defendant should be tried in irons, and that none of his rights were violated by being tried in irons without his consent. The bill of exceptions contained a statement in effect that there were no circumstances or facts before the court showing any excuse or grounds for compelling the prisoner to be tried in irons. Exceptions to this ruling hav-

ing been taken, the judgment on appeal was reversed on this ground alone. ·

The judge who pronounced the opinion of the court said: " A prisoner on his trial in court is in the custody of the law, and under the immediate control of and subject to the orders of the court. Should the court refuse to allow the prisoner on trial for felony to manage and control in person, his own defense, or refuse him the aid of counsel in the conduct of such defense, he would manifestly be deprived of a constitutional right, and a judgment against him on such trial should be reversed. In my opinion, any order or action of the court, which without evident necessity imposes physical burdens, pains and restraints upon a prisoner during the progress of his trial, inevitably tends to confuse and embarrass his mental faculties, and thereby materially to abridge and prejudicially affect his constitutional rights of defense; and especially would such physical bonds and restraints in like manner materially impair and prejudicially affect his statutory privilege of becoming a competent witness and testifying in his own behalf. Again, to require a prisoner during the progress of his trial before the court and jury, to appear and remain with chains and shackles upon his limbs without evident necessity for such restraint, for the purpose of securing his presence for judgment, is a direct violation of the common-law rule."

The case of the *State v. King*, 1 Mo. Appeals, 438, was decided in 1876. The defendant having been indicted for murder in the criminal court of St. Louis, was brought to the bar of that court for trial, being ironed with handcuffs or manacles upon his hands and wrists, his counsel made a motion to the court for their removal, which was overruled, the court stating as a reason, that the prisoner had made an assault on J. G. Broemsor, the husband of deceased, in open court, when the accused was last in court, and exceptions

were taken. The trial proceeded, resulting in a conviction and sentence to be hanged.

On appeal to the St. Louis court of appeals, the judgment was reversed on this ground alone, and on appeal therefrom to the supreme court, the judgment of the court of appeals was affirmed: 64 Mo., 591. In this case the court made a distinction between manacles on the hands or wrists and shackles on the legs, holding that while the latter might be permitted in cases of necessity to prevent an escape, it would be error under all circumstances to compel the prisoner to be tried with irons upon his hands, and quotes Hawkins (2 P. C., ch. 28), as authority.

In the *Case of Layer*, 16 Howell's St. Tr., 94, the rule is clearly laid down as to when or what stage of the proceedings the irons should be removed, and in this respect a distinction is made between the argument and trial. On this point the Lord Chief Justice said:

"No doubt when he comes upon his trial, the authority is that he is not to be *in vinculis* during his trial, but should have the use of his reason and all advantages to clear his innocence. Here he is only called on to plead by advice of his counsel, he is not to be tried now; when he comes to be tried, if he makes that complaint, the court will take care that he shall be in a condition proper to make his defense; but when he is only called on to plead and his counsel by him to advise him what to plead, why are his chains to be taken off this minute to be put on again the next?"

A rule somewhat in conflict with that laid down in 42 Cal., 165, and 1 Mo. Appeals, 438, *supra*, has been adopted in the more recent case of *Faire v. State*, reported in Southern L. J., 348. In this case it is held that the right to manacle persons during trials exists, and should be left to the discretion of the court. The prisoner had been tried with shackles on his feet or ankles, though his counsel, on his behalf, asked their removal. The prisoner was found guilty of murder.

The reason given by the court for refusing to order the shackles to be removed, was that the prisoner had threatened that, if found guilty, he would never come out of the court house alive, but that he would escape, or that the officers would have to shoot him.

The case was appealed for the reason that the court below had ordered the prisoner's feet to be shackled during his trial. The appellate court refused to reverse the judgment, and held that, while it ought to require an extreme case to justify the placing of shackles or manacles upon the prisoner when undergoing trial; yet, whether it is necessary or not should be left to the discretion of the trial court, and cannot be reviewed on appeal: Central L. J., Dec. 2, 1881, 426.

This decision, in our opinion, comes nearer to the enunciation of the true rule of law founded in sound reason than any that has preceded it. We cannot, however, concur in this decision to the extent that no case of this kind is reviewable on appeal.

The better rule would seem to be that when the record affirmatively discloses the fact that there was no reason whatever for placing shackles or manacles upon the prisoner against his protest, while undergoing trial, a question of law arises which may be reviewed on appeal, and the judgment reversed; but when the record discloses some valid or reasonable ground of apprehension that the prisoner may attempt to escape, or injure the bystanders, or the officers in charge, or will be otherwise disorderly or dangerous, it should be left entirely to the discretion of the trial court to determine whether the prisoner should be ironed or not; and when the record is silent as to whether there was or was not any valid excuse for retaining the irons upon the prisoner during trial, the appellate court will presume that the court below exercised a sound and reasonable discretion in refusing to order the irons to be removed.

In the present case, had the irons remained on the prisoner

during his trial, or for any considerable portion thereof, we would be compelled under this rule to reverse the judgment; but as it appeared from the record that they so remained but for an inconsiderable time, while 'a few only of the jurors were being called and examined, and before any of them had been accepted and sworn, we are of the opinion that the prisoner's rights of defense were not prejudicially affected thereby to an extent that will justify a reversal of the judgment on that ground.

The bill of exceptions brings into the record only detached and disconnected parts of the testimony. There is no evidence before the court showing, or even indicating, any of the facts and circumstances attending or connected with the killing of the deceased by the appellant; for this reason we are unable to perceive whether the rulings of the court below on questions raised in taking this testimony were erroneous or not.

For instance, on the cross-examination of Martin H. Barber, one of the witnesses for the prosecution, as appears by the bill of exceptions, this detached and disconnected question was asked by appellant's counsel, to wit:

" Did you, or did you not, hear any party or parties order Kelly and Thompson to be hung at any time on that day?" To which the witness answered: " I didn't hear anybody order it, but I heard some of the parties holler, 'hang him, hang him!'"

The witness was then asked this question: " Did you hear any of the prosecuting witnesses say that?"

This question was objected to on behalf of the prosecution, the objection sustained by the court, and the ruling of the court excepted to by appellant's counsel.

Was this ruling of the court error? We are unable to determine from the record what day or occasion is referred to in the first mentioned question by the words, " at any time on that day "—whether it was on the day of the killing,

or some other day and occasion wholly disconnected there-
from. Unless there is enough before us to determine whether
there was error or not, we must presume that the ruling of
the court below was proper.

On the cross-examination of this same witness this de-
tached and disconnected question was asked, viz.:

"Did you, on the day of this occurrence, hear the de-
ceased make any threats toward the defendant?"

This was objected to on behalf of the prosecution, "on the
ground that threats of the deceased to be admissible must
first be proved to have been communicated to the defend-
ant."

The objection was sustained by the court and such ruling
excepted to.

In a proper case, threats, though uncommunicated to the
defendant, would be admissible as competent testimony.
There is nothing before us to show whether this was a proper
case to render such testimony admissible or not.

Errors may have occurred during the progress of the trial,
but the evidence appearing in the bill of exceptions is too
meagre and disconnected to enable us to discover them.

The judgment is affirmed

All concur.