[No. 9320.  Department Two.  February 2, 1911.]

THE STATE OF WASHINGTON, *Respondent*, v. CONSTANTINO CATSAMPAS, *Appellant*.[1]

MAYHEM—INFORMATION—SUFFICIENCY.  An information, practically in the language of the statute, charging the accused with biting off the end of the nose of a person with intent to disfigure him, sufficiently charges maiming, as defined by Rem. & Bal. Code, § 2407.

WITNESSES—IMPEACHMENT—CRIMINAL LAW.  In a criminal prosecution, where a witness for the state had testified that he did not know what the accused had said after the fight, it is prejudicial error for the state to attempt to impeach the witness by showing that he had made other statements to the prosecuting attorney; since it did not affect his credibility as to any affirmative statement made by him, and only had the effect to get before the jury the alleged declarations of a discredited witness.

CRIMINAL LAW—TRIAL.  In a criminal prosecution, it is not commendable practice to allow a witness to give a spectacular illustration and reproduction of a fight before the jury.

Appeal from a judgment of the superior court for Pierce county, Chapman, J., entered September 14, 1910, upon a trial and conviction of maiming.  Reversed.

*Grant A. Dentler*, for appellant.

*J. L. McMurray*, *A. O. Burmeister*, and *F. G. Remann*, for respondent.

DUNBAR, C. J.—The information in this case is as follows:

"That the said Constantino Catsampas, in the county of Pierce, in the state of Washington, on or about the 17th day of August, 1910, then and there being unlawfully and feloniously did then and there, with intent to disfigure one John Propper, wilfully inflict upon him the said John Propper an injury, to wit: a biting off of the end of the nose of the said John Propper with the teeth of the said Constantino Catsampas, thereby seriously disfiguring the person of the said John Propper."

[1]Reported in 112 Pac. 1116.

There was a demurrer to the information on the ground that the facts stated did not constitute a crime. The overruling of this demurrer is alleged as error.

The statute upon which the information is based is as follows:

"Every person who, with intent to commit a felony, or to injure, disfigure or disable another, shall willfully inflict upon him an injury which—

"(1)   Seriously disfigures his person by any mutilation thereof; or

"(2)   Destroys or displaces any member or organ of his body; or

"(3)   Seriously diminishes his physical vigor by the injury of any member or organ;

"Shall be guilty of maiming and be punished," etc. Rem. & Bal. Code, § 2407.

It is contended by the appellant that the facts charged do not fall within any of the provisions of said statute. But to our minds they so plainly do that no argument could be more convincing than the mere recitation of the statute and the facts set forth in the information.

The third assignment of error is based upon the action of the court in admitting testimony tending to impeach one of the state's witnesses. One Hanson, who was introduced by the state, after detailing the circumstances of the fight in which the end of John Propper's nose was bitten off by the appellant, in answer to the question: "What did you hear Catsampas say, if anything, after that?"   Said:

"I don't know.   Somebody back of me shouted; he said, 'Let them fight;' and somebody said, 'What did you do to him?'   Catsampas said, 'You don't know what he done to me.' Then he mumbled something after that.   I could not exactly hear what it was after that, but he mumbled something.   I could not say for sure what it was.   I am not positive what he did say, so far as that is concerned."

Then, after some further questions, the following was propounded:

"Didn't you tell me at that time, Mr. Hanson, that you

heard Catsampas say, immediately after they were separated —after you had separated them, 'There, I have done something to you now, Joe, that you will never get back in one hundred thousand years?"

Afterwards the attorneys for the state, A. O. Burmeister and Fred G. Remann, on rebuttal, testified concerning a conversation that they had with the said Hanson, wherein he had told them that Hanson, in relating the circumstances of the fight, said to them that the defendant had said, "There, I have done something to you now, Joe, that you will never get back in one hundred thousand years." This testimony was admitted over the objection of the appellant, and such admission is urged as prejudicial error.

From the foregoing it will be seen that this is not a case where a party offering a witness is taken by surprise by reason of an affirmative statement by said witness prejudicial to its interest; but this was simply a negative statement on the part of the witness, which in itself was in no degree prejudicial. The only contention is that the witness did not state the case as strongly as the attorneys for the state desired, or as they claimed he had stated it to them. There was nothing detrimental to the state's interest in what he did say. The complaint is in regard to what he did not say.

This case cannot be distinguished from *State v. Simmons*, 52 Wash. 132, 100 Pac. 269, where the court, in discussing this question, said:

"Romer Zimma was called as a witness for the appellant, and in response to a question, testified that he did not see the complaining witness and a third party hugging and kissing each other at a time and place specified. He was then asked the following question: 'Now, Romer, don't you remember of stating to me that at the time you saw Parrot at Johnson's, winter before last, that you saw them in the kitchen by themselves, hugging and kissing each other?' to which an objection was sustained, and on this ruling the twentieth assignment of error is predicated. Had the witness testified to some affirmative fact prejudicial to the appellant, the ruling complained of would perhaps be erroneous. Greenleaf, Evidence,

§ 444. But the witness testified to a mere negative, and had he been ever so successfully impeached the only effect would be to destroy testimony which was in itself worthless. The error was therefore harmless."

So in this case, the object of the testimony not being to affect the credibility of a witness concerning any affirmative statement by him which would be prejudicial to the state's interest, the only effect it could have would be to get before the jury the alleged statement of a discredited witness—discredited by the state itself.

The second assignment of error was based on the action of the court compelling the appellant to give a spectacular illustration and reproduction of the fight before the jury, using the deputy prosecuting attorney, who was the cross-examining counsel, to represent his antagonist Propper. In view of the probability of a retrial in this case, we will simply say that such practice is not commendable.

But for the third error assigned, which has been discussed above, the judgment will have to be reversed. It is so ordered.

RUDKIN, CROW, MORRIS, and CHADWICK, JJ., concur.