481 P.2d 412

**STATE of New Mexico, Plaintiff-Appellee,**

v.

**Daniel D. GOMEZ, Defendant-Appellant.**

**No. 548.**

Court of Appeals of New Mexico.

Feb. 5, 1971.

Elvin Kanter, Albuquerque, for defendant-appellant.

James A. Maloney, Atty. Gen., Richard J. Smith, Asst. Atty. Gen., Santa Fe, for plaintiff-appellee.

## OPINION

SPIESS, Chief Judge.

Defendant appeals from a judgment and sentence rendered pursuant to a jury ver-

dict finding him guilty of taking a vehicle intentionally and without the consent of the owner in violation of § 64–9–4, N.M.S.A. 1953 (Repl.Vol. 9, pt. 2). We affirm.

■ Three points are relied upon for reversal. The first point as stated by defendant is:

"Defendant's conviction should be reversed because his trial was prejudiced by his being observed in handcuffs by members of the jury prior to the beginning of trial and during recess."

Defendant says that his attorney "* * * moved to strike the entire jury panel because some of them had observed the defendant in handcuffs, in the custody of a deputy sheriff in the corridor prior to the commencement of the trial. * * * After the luncheon break, defendant's attorney made a new motion for a mistrial because a number of the jurors observed defendant in handcuffs, in the custody of a deputy sheriff returning to the trial. * * *" Both of these motions were denied. The question, in substance, is whether the trial court abused its discretion in denying either or both of the motions.

It is not contended that defendant was in handcuffs in the courtroom at any time during jury selection or trial. Territory of New Mexico v. Kelly, 2 N.M. 292, 37 Pac.States Repts. 292 (1882), cited and relied upon by defendant, does not seem to us to support his position. In Kelly, the court, in reciting the facts after pointing out that the defendant was in irons, said:

"In the present case, had the irons remained on the prisoner during his trial, or for any considerable portion thereof, we would be compelled under this rule to reverse the judgment; but as it appeared from the record that they so remained but for an inconsiderable time, while a few only of the jurors were being called and examined, and before any of them had been accepted and sworn, * * *"

Upon this fact statement, the court concluded "* * * we are of the opinion that the prisoner's rights of defense were not prejudicially affected thereby to an extent that will justify a reversal of the judgment on that ground."

It appears to us that the possibility of prejudice, as disclosed by the facts in the present case, was substantially less than that considered in Kelly.

We are in accord with the holding of the Supreme Court of Arizona involving a factual situation and contention, both comparable to those presented here, wherein the following appears:

"Appellant next contends his rights were prejudiced because he was handcuffed when he was brought to the courtroom and that the jury panel, standing out in the hallway, saw him with the handcuffs on. Neither appellant nor his counsel contends that he remained shackled during the course of the trial. So far as the record shows he was not manacled inside the courtroom, and what he complains of is the fact that he was moved from the jail to the courtroom with handcuffs on. It has long been recognized that a prisoner coming into court for trial is entitled to make his appearance free of shackles or bonds. However, exceptions to this rule have been made, and in such matters the conduct of the trial rests in the sound discretion of the court. Under the record in the instant case there is nothing to show that the trial court abused this discretion, or that the handcuffs were not removed as soon as safety would permit. * * *"

State v. Sherron, 105 Ariz. 277, 463 P.2d 533 (1970). We do not find an abuse of discretion on the part of the trial judge in denying either or both of defendant's motions.

■ By his second point defendant asserts:

"The admission of irrelevant and prejudicial evidence that defendant wrecked the automobile he was accused of taking and that he refused medical treatment so deprived him of due process of law that his conviction should be reversed de-

'. spite the fact that no objection was made below."

The record reflects that, upon being questioned by a prosecutor, the owner of the automobile allegedly taken by the defendant testified:

"* * * it was wrecked. They had run into an adobe wall. * * * You couldn't move the car. The undercarriage, I believe, was bent, the frame was bent. The hood was bent. The driver's side was bent in, the fender was bent and the radiator was against the fan. It was just wrecked."

Defendant concedes that no objection was made to the introduction of the evidence at the trial. He further recognizes that, absent such objection, the admissibility of the evidence is generally not reviewable. DeVilliers v. Balcomb, 79 N.M. 572, 446 P.2d 220 (1968); State v. Lord, 42 N.M. 638, 84 P.2d 80 (1938). Defendant, however, seeks to invoke the doctrine of fundamental error as a means of securing a review of the claimed error. The doctrine is resorted to only under exceptional circumstances and is applied as a means of preventing a miscarriage of justice.

In State v. Torres, 78 N.M. 597, 435 P. 2d 216 (Ct.App.1967), is stated:

"The doctrine of fundamental error is resorted to in criminal cases only if the innocence of the defendant appears indisputable, or if the question of his guilt is so doubtful that it would shock the conscience to permit his conviction to stand. State v. Sanders, 54 N.M. 369, 225 P.2d 150 (1950). If there is a total absence of evidence to support a conviction, as well as evidence of an exculpatory nature, then an appellate court has the duty to see that substantial justice is done and to set aside the conviction. State v. Salazar, 78 N.M. 329, 431 P.2d 62 (1967). * * *"

The record here does not disclose the presence of these elements and, consequently, the doctrine is not available.

As a further means of securing a review, defendant argues that the introduction of the evidence resulted in a deprivation of due process. He relies upon State v. Webb, 67 N.M. 293, 354 P.2d 1112 (1960). The only question presented in *Webb* for reversal was the contention that defendant was denied due process of law in that he was an indigent and that the trial court failed to provide a psychiatric examination as to his sanity. The attack, as pointed out by the court, in these circumstances was "on the judgment as being inherently and fatally defective for lack of due process." The evidence in the present case was not of such a nature as to render the judgment inherently or fatally defective as was the case in *Webb*.

The testimony as to the collision of the vehicle and the fact that it had collided with a building was corroborative of the testimony of an officer relating to his pursuit of defendant while defendant was driving the car, and at which time defendant skidded into a building.

Further objection was made relating to testimony that defendant had refused medical treatment at the time of arrest. This evidence was probably inadmissible, but, in our opinion, could not have been prejudicial.

Defendant finally contends that he should be granted a new trial because "* * * An excessive number of leading questions were allowed over defense attorney's objections." Some five questions, claimed to have been asked, are quoted in the brief in chief. Defendant has not undertaken to show that permitting the questions to be asked was prejudicial. He had the burden of showing prejudice. State v. Mitchell, 43 N.M. 138, 87 P.2d 432 (1939); State v. Young, 37 N.M. 66, 17 P.2d 949 (1932). From our reading of the questions we are unable to see how defendant could have been prejudiced through the asking.

The judgment should be affirmed.

It is so ordered.

WOOD and HENDLEY, JJ., concur.