503 P.2d 1154

**STATE of New Mexico, Plaintiff-Appellee,**

v.

**Raymond AGUIRRE, Defendant-Appellant.**

**No. 9490.**

Supreme Court of New Mexico.

Dec. 8, 1972.

R. M. Higginbotham, Roswell, for defendant-appellant.

David L. Norvell, Atty. Gen., Victor Moss, Frank N. Chavez, Jr., Asst. Attys. Gen., Santa Fe, for plaintiff-appellee.

## OPINION

OMAN, Justice.

Defendant has appealed from his convictions of kidnapping, rape and assault with intent to commit a violent felony. We affirm.

Briefly the facts are: At about 8:00 p. m. on the evening of October 27, 1971, defendant stopped a fifteen-year-old girl who was driving a pickup truck on a city street. He drove along side the truck and called to the girl that the truck's tires were on fire and she should take it to a service station. She answered, "Okay. Thank you." She continued on her way. Shortly thereafter he was still following her and was flashing the headlights on his vehicle. She stopped and both of them stepped out of their vehicles. He told her it must be the brakes and to take the pickup to a gas station. She again thanked him and got back into the pickup to drive off. At that time he ordered her to "scoot over," and out of fear she moved to the extreme right side of the cab. He got in the driver's seat and ordered her to "scoot to the middle." When she refused, he placed some object against her side and ordered her to "scoot to the middle or I'll put this through you."

He drove for some distance out of the city and into the country, where he stopped at a dump ground. He got out, ordered her out, and proceeded to rape her. At that time he had a knife which he placed on the ground close by.

After raping her, he stabbed her twelve times with the knife. He also endeavored to strangle her with his hands and with a piece of rope.

He then covered her body with rocks and a piece of metal, and this is where she was when she regained consciousness. She removed herself from under the rocks and metal and walked until she reached the highway where she was picked up by some motorists and was taken back to town. She was then taken to a hospital.

Defendant first contends the trial court abused its discretion in denying his motion for a change of venue. In support of his motion, he submitted five newspaper articles published in the daily newspaper between October 28, 1971 and November 16, 1971 concerning the incident, and also a number of letters to the editor which had been published in the daily newspaper. The State offered the testimony of thirteen witnesses from different parts of the city and from different walks of life. Only one of these thirteen testified that in her opinion defendant could not get a fair trial in the county. Another witness, who operated a bar, said he had heard the case discussed by some people in the bar and had heard them say " * * * if the defendant was found guilty, he should be punished. * * *" This same witness also expressed a positive opinion that defendant could get a fair trial in the county. Another witness testified she had some doubt as to whether she personally could sit as a fair and impartial juror in the case, but she also testified she felt defendant could get a fair and impartial trial in the county. The remaining ten witnesses all testified they knew of no reason why defendant could not get a fair and impartial trial in the county and were of the opinion that he could.

The trial court ruled the evidence failed to show a substantial reason to believe a fair and impartial jury could not be obtained in the county and entered an order denying the motion for change of venue. The trial court's finding and order are supported by substantial evidence. Therefore, it was within the trial court's discretion to deny the motion. State v. Vaughn, 82 N.M. 310, 481 P.2d 98 (1971); McCauley v. Ray, 80 N.M. 171, 453 P.2d 192 (1968); State v. Jones, 52 N.M. 118, 192 P.2d 559 (1948); State v. Atwood, 83 N. M. 416, 492 P.2d 1279 (Ct.App.1971).

■ Defendant next claims error on the part of the trial court in allowing two other young women to testify concerning being followed at night by a man in an automobile who claimed the brakes on the vehicles the women were driving were on fire. One of these young women was nineteen years of age and was stopped by defendant on October 25, 1971. After both had gotten out of their cars and defendant had told her, "your brakes are on fire," he grabbed her by the arm and ordered her to get in his car. He was holding a knife in his right hand. She grabbed his right arm and held it. Shortly thereafter they both backed off and she returned to her automobile. She took the license number of the other vehicle, which turned out to be defendant's. She also positively identified the defendant in court as the man who had stopped her and grabbed her by the arm.

The other young woman was twenty years of age. On October 27, 1971, she was driving from a parking lot when she noticed a man drive up behind her in a vehicle which she described as looking similar to defendant's automobile. Shortly after leaving the parking lot she noticed the man following her and flashing his lights by turning them from bright to dim and back to bright. He did this several times. She kept driving and he endeavored to pass her, but she speeded up, reached her parent's home and pulled into the driveway before stopping. He pulled up in the driveway and said, "You better have your brakes checked, there is fire coming out of the back of your car." She proceeded immediately into the house. A check of her car later revealed nothing wrong.

She was unable to positively identify the defendant, but she did state the man who followed her was wearing a hat similar to the defendant's hat, and, as already stated, identified the car he was driving as being similar to the defendant's.

The trial court instructed the jury as follows concerning the testimony of these two witnesses: "You are instructed that evidence of these collateral transactions is to be considered by you as bearing solely on the issue of identity of the Defendant, and not for the purpose of establishing the truth of the collateral transaction."

■ Evidence of collateral offenses is generally inadmissible to prove the guilt of a defendant of a specific crime. State v. Garcia, 80 N.M. 21, 450 P.2d 621 (1969); State v. Velarde, 67 N.M. 224, 354 P.2d 522 (1960); State v. Nelson, 65 N.M. 403, 338 P.2d 301 (1959); State v. Garcia, 83 N.M. 51, 487 P.2d 1356 (Ct.App.1971). However, one of the recognized exceptions to this general rule is that evidence of collateral offenses is admissible to prove the identity of the defendant as the person who committed the crime with which he is charged and for which he is being tried. State v. Lord, 42 N.M. 638, 84 P.2d 80 (1938); State v. Lopez, 80 N.M. 599, 458 P.2d 851 (Ct.App.1969). We agree with the trial court that the testimony of these two witnesses did tend to prove the identity of defendant. See State v. Lopez, supra.

Defendant next asserts error on the part of the trial court in admitting into evidence two photographs of defendant which had been identified by the victim while in the hospital, and in admitting into evidence the testimony of the police detective who had shown the photographs to the victim.

■ Defendant claims the testimony of the detective and the identification of the defendant by the victim from the photographs raised an issue as to the validity of her in-court identification of defendant. He claims this issue should have been resolved in an evidentiary proceeding before the trial court outside the hearing of the jury. He relies upon Gilbert v. California, 388 U.S. 263, 87 S.Ct. 1951, 18 L.Ed.2d 1178 (1967); United States v. Wade, 388 U.S. 218, 87 S.Ct. 1926, 18 L.Ed.2d 1149 (1967); State v. Crump, 82 N.M. 487, 484 P.2d 329 (1971); State v. Turner, 81 N.M. 571, 469 P.2d 720 (Ct.App.1970). In the Crump case an evidentiary hearing was held outside the presence of the jury. In the Turner case no such hearing was held.

However, there was no issue of "illegal taint" presented. In neither of these cases was it held that because the victim has previously identified the defendant from photographs this raises a question as to the validity of a subsequent in-court identification. Even assuming, as we did in the Crump case, the applicability of the rationale of Gilbert v. California, supra, and United States v. Wade, supra, to the factual situation here, the trial court did not err in failing to conduct an evidentiary hearing in the absence of the jury. There were ten photographs of nine different persons, including two of defendant, shown to the victim one at a time. The two of defendant were shown to her as numbers 3 and 7. She immediately and without hesitation identified him when the number 3 photograph was shown to her and again when the number 7 photograph was shown. There is no claim that the procedures followed in showing the photographs were improper or suggestive in any way other than the fact that the officer did show the victim two photographs of defendant and only one of each of the other eight persons. However, the views of the defendant in the two photographs of him were different, and, as already stated, the victim promptly identified both pictures as they were shown to her as being of the man who had kidnapped, raped, stabbed and undertaken to strangle her. Had she not immediately recognized him in both photographs, there might be some reason to think the presence of two photographs of one person and only one photograph of each of the other persons was suggestive, but under the circumstances the suggestion is just the opposite, to wit, that there was not the slightest doubt in her mind that these were both photographs of her assailant.

There was no objection to the testimony of the officer as to the procedures followed in showing the photographs, and, when they were offered into evidence, defendant's attorney requested and was granted, leave to conduct a voir dire examination of the officer as to how the photographs were selected to be shown to the victim. Then, as already indicated, the only objection was that there were two photographs of defendant and only one of the other eight persons.

The victim's in-court identification of defendant was positive and nothing she said in any way suggests any dependence of this in-court identification upon her prior identification of defendant's photographs. She had been with and very close to defendant over a considerable length of time and under circumstances which were likely to make her recollection and identification of him certain. Defendant's claim of prejudice by reason of the photographic identification of him is untenable. The photographic identification procedure followed was not so impermissibly suggestive as to give rise to a substantial likelihood of irreparable misidentification. In fact, as above observed, the procedure followed could very properly suggest care on the part of the officer in making certain the identification by the victim was a correct one. Compare Simmons v. United States, 390 U.S. 377, 88 S.Ct. 967, 19 L.Ed.2d 1247 (1968); State v. Jones, 83 N.M. 600, 495 P.2d 380 (Ct.App.1972); State v. Gilliam, 83 N.M. 325, 491 P.2d 1080 (Ct.App.1971); State v. Baldonado, 82 N.M. 581, 484 P.2d 1291 (Ct.App.1971); State v. Morales, 81 N.M. 333, 466 P.2d 899 (Ct.App.1970); State v. Carrothers, 79 N.M. 347, 443 P.2d 517 (Ct.App.1968).

Defendant next claims error on the part of the trial court in "Permitting defendant to be used to illustrate [an] alleged struggle in the presence of [the] jury with * * * *." the above referred to witness who grabbed defendant's right arm when she observed the knife in his hand.

This witness, who was apparently larger than the defendant, was asked by the district attorney to step down from the witness stand. The district attorney then turned to defendant and asked him to stand beside the witness in front of the jury. The witness was then asked to demonstrate

how she "was holding him [defendant] when [she] said he had the knife."

She thereupon conducted the demonstration, and her explanation of it, as shown by the record, was: "Like this, and he had his knife like that. [Indicating] I was pushing off, like that. [Indicating]."

The witness thereupon returned to the stand and the defendant returned to his seat. There was no objection or comment made by defendant, his attorney, the trial judge or anyone else.

Defendant now takes the position that being asked to stand beside the witness and the witness being asked to demonstrate what she had done when seeing the knife constitutes fundamental error. He relies upon State v. Sluder, 82 N.M. 755, 487 P. 2d 183 (Ct.App.1971); State v. Gomez, 82 N.M. 333, 481 P.2d 412 (Ct.App.1971); Territory of New Mexico v. Kelly, 2 N.M. 292 (1882).

In the Sluder case the defendant claimed error on the ground the sheriff had displayed him before the jury panel in his prison uniform. The claim was dismissed by the Court of Appeals on the ground that there was no showing that defendant was in the courtroom at any time dressed in prison clothing. Consequently, the court did not decide whether it would have been reversible error had defendant been displayed before the jury in his prison uniform.

In the Gomez case the Court of Appeals held the trial court had not abused its discretion in denying defendant's motion to strike the jury panel and for a mistrial because some of the jurors had seen him in the corridor in handcuffs both before the commencement of the trial and on his return to the courtroom after the noon recess.

In the Kelly case the defendant was present in the courtroom in irons for an "inconsiderable time, while a few only of the jurors were being called and examined, and before any of them had been accepted and sworn, * * *". The court held his rights of defense were not thereby prejudi-

cially affected to an extent which would justify a reversal. It was said by the court that "had the irons remained on the prisoner during his trial, or for any considerable portion thereof," a reversal would have been required.

Nothing said in any of those cases suggests a demonstration such as was performed in the case now before us constitutes reversible error, and in none of those cases was the issue of fundamental error raised in relation to the appearances or claimed appearances of the defendants in prison uniform or irons.

■ The demonstration here complained of did not constitute reversible error. No authorities have been cited which would support the application of the doctrine of fundamental error to the facts of this case. It has been repeatedly held that:

"The doctrine of fundamental error is resorted to in criminal cases only if the innocence of the defendant appears indisputable, or if the question of his guilt is so doubtful that it would shock the conscience to permit his conviction to stand. State v. Sanders, 54 N.M. 369, 225 P.2d 150 (1950). If there is a total absence of evidence to support a conviction, as well as evidence of an exculpatory nature, then an appellate court has the duty to see that substantial justice is done and to set aside the conviction. State v. Salazar, 78 N.M. 329, 431 P.2d 62 (1967)."

State v. Gomez, 82 N.M. 333, 481 P.2d 412 (Ct.App.1971); State v. Sedillo, 81 N. M. 47, 462 P.2d 632 (Ct.App.1969); State v. Tapia, 79 N.M. 344, 443 P.2d 514 (Ct. App.1968); State v. Torres, 78 N.M. 597, 435 P.2d 216 (Ct.App.1967).

■ Although we find no reversible error in the defendant being requested to participate and in participating in the demonstration, we caution against requiring a defendant to participate in unnecessary demonstrations or in demonstrations which tend to degrade, humiliate, insult, disgrace or otherwise unjustly prejudice him. See generally on this subject, Holt v. United

States, 218 U.S. 245, 31 S.Ct. 2, 54 L.Ed. 1021 (1910); State v. Taylor, 99 Ariz. 85, 407 P.2d 59 (1965); State v. Catsampas, 62 Wash. 70, 112 P. 1116 (1911); Lumpkin v. State, 19 Ala.App. 272, 97 So. 171 (1923); 8 Wigmore on Evidence, § 2265 (1961) and cases therein cited.

Defendant next contends the trial court erred in denying his motion to dismiss the kidnapping charge made at the close of the State's case and renewed at the time both sides rested.

His claim is that the following emphasized language appearing in § 40A–4–1, N. M.S.A.1953 (2d Repl.Vol. 6, 1972), "has no general meaning by which the public can comprehend" and the statute "is so vague as to violate due process," and, therefore, "should be determined unconstitutional":

"40A–4–1. Kidnaping.—Kidnaping is the unlawful taking, restraining or confining of a person, by force or deception, with intent that the victim be held for ransom, as a hostage, confined against his will, or to be *held to service against the victim's will*." [Emphasis added]

He relies upon the decisions in State v. Crump, supra; State v. Clark, 80 N.M. 340, 455 P.2d 844 (1969); State v. Jaramillo, 83 N.M. 800, 498 P.2d 687 (Ct.App. 1972). He does not specify the language in the opinions in any of those cases upon which he particularly relies, and he attempts no explanation of his reason or reasons for relying upon the decisions in those cases.

In the Crump case the judgment of conviction and sentence for kidnapping was reversed. The basis of the reversal was the failure of the evidence to support a finding that the defendant intended to hold his victim as a "hostage." We also held that the trial court's definition of "hostage" was "broad enough to include the concept of demand which would force the victim to service against his will, which is essential to the third type of act, or conduct, constituting kidnapping as defined in State v. Clark, supra." The defendant was not charged under and the jury was not in-

structed on this definition of kidnapping in the Crump case.

In the Clark case we held § 40A–4–1, supra, should be read to define kidnapping as including three separate acts or courses of conduct. The third of these as set forth in our decision was:

"Kidnapping is the unlawful taking, restraining or confining of a person, by force or deception with intent that the victim . . . be held to service against the victim's will."

Thus, although the question now presented was not an issue in the Clark case, it is apparent the decision in that case clearly implies the constitutionality of the statute, and certainly it does not support defendant's position in the case now before us.

In the Jaramillo case a portion of a statute making it criminal to use or occupy public property in unlawful circumstances was held unconstitutional. The use or occupancy was made wrongful only after the lawful custodian of the property, or his representative, had determined the property was "being used or occupied contrary to its intended or customary use." No standards were provided by which the custodian could determine a use or occupancy to be contrary to the intended or customary use. We fail to see how the holding in the Jaramillo case supports defendant's contention here. Under the pertinent definition of kidnapping, it is the intent of defendant which controls, and the determination as to whether this intent was present is for the trier of the facts when this is an issue in the case.

Defendant's contention that the words, "held to service against the victim's will," has no general meaning which the public can comprehend, is not supported by argument or authority, and, in our opinion, cannot find support in reason. None of the words contained in the said clause is unusual or difficult of definition or understanding. A reference to any standard dictionary readily reveals that each of these words has a common meaning, and we cannot agree that their combination in the or-

der shown conveys an unusual meaning which the public cannot comprehend. Defendant makes no contention that he cannot understand their meaning.

In any event, the contention now presented was not included in the motion made in the trial court to dismiss the kidnapping charges. The contention then was that the State failed to prove the victim was held for service against her will.

■ Defendant's final point is that the "Closing remarks by prosecutor as to 'uncontroverted testimony' by State witnesses addresses itself to the defendant's failure to testify and constitutes fundamental error."

The prosecutor's words, which defendant claims were so prejudicial as to constitute fundamental error, were:

"* * * and then he undressed her from the waist down. He then, by the *testimony, and recall this is uncontradicted testimony*, he then undressed himself, and told her what he was going to do. * * *" [Emphasis added]

We are unable to evaluate this remark as constituting fundamental error, and we do not construe the remark as a comment upon defendant's failure to testify.

Defendant relies upon State v. Jones, 80 N.M. 753, 461 P.2d 235 (Ct.App.1969). The Jones case did not involve the issue of fundamental error. In that case the following occurred:

"In his closing argument to the jury the district attorney stated: '* * * there is no testimony at all, from either one of these sterling Defendants or anybody else * * *' Immediately defense counsel objected, pointing out that the district attorney's phrase was a 'comment concerning the refusal of Defendant's [sic] to take the stand.' Defense counsel moved for a mistrial on the ground that such a comment to the jury was in contravention of the defendants' Fifth Amendment right to remain silent.

"The trial court ruled: 'As to the objection regarding the argument, it is

probably unnecessary and improper to refer to the Defendants, so that the Jury will disregard Mr. Hanagan's statement that there wasn't any testimony by these Defendants. * * *'"

The statement of the district attorney in the Jones case clearly called attention of the jury to the fact that the defendants had not testified. No such statement was made in the case now before us. The reference was to the uncontradicted testimony of the victim. This was not only the truth, but was nothing more than a fair comment upon the evidence. See and compare the facts and the holdings on this question of fair comment on the evidence in State v. Turner, 81 N.M. 571, 469 P.2d 720 (Ct. App.1970); State v. Lindsey, 81 N.M. 173, 464 P.2d 903 (Ct.App.1969).

The judgment of the trial court by which defendant was convicted of kidnapping, rape and assault with intent to commit a violent felony should be affirmed.

It is so ordered.

COMPTON, C. J., and STEPHENSON, J., concur.