536 P.2d 1093
**STATE of New Mexico, Plaintiff-Appellee,**
v.
**Don SELF, Defendant-Appellant.**
**No. 1760.**

Court of Appeals of New Mexico.
May 28, 1975.

George H. Farrah, III, Knott & D'Angelo, Albuquerque, for defendant-appellant.

Toney Anaya, Atty. Gen., Jay F. Rosenthal, Ralph W. Muxlow II, Asst. Attys. Gen., Santa Fe, for plaintiff-appellee.

## OPINION

HENDLEY, Judge.

Defendant was convicted of the armed robbery of a pawn shop contrary to § 40A–16–2, N.M.S.A.1953 (2d Repl.Vol. 6, 1972, Supp.1973). He appeals alleging two points for reversal: (1) that certain testimony of eyewitness identification should have been suppressed; and (2) that it was reversible error to admit into evidence the out-of-court statements of one Derill Gleim. We affirm the first point, reverse on the second point and remand for a new trial.

### (1) *Identification*

The defendant contends that in-court identification testimony of three witnesses was impermissibly tainted by prior suggestion on the part of the state. These three witnesses made positive identification of the defendant as the robber at trial. They were Ron Hicks, Mary Blackwood and Della Julianto. None of the four other persons that were present during the robbery were ever able to make positive identification of the defendant as the robber.

There are two possible sources of impermissible taint with regard to the identifications. First, approximately one month after the incident, the witnesses were asked to view a photo array. The array consisted of eight photographs—two of the defendant, two of another suspect and four of other people. All were of young, white males with long hair and droopy mustaches. The duplication of photographs of the defendant and the other suspect occurred because both face and full-length pictures of them were included. The photographs of the defendant were the second and sixth ones shown.

Only Ron Hicks was able to make a positive identification of the defendant from these photographs. He recognized the defendant immediately upon viewing the second picture. He later identified the defendant at the preliminary hearing and made a positive identification at trial.

We deem it significant, and probative of the alleged "suggestiveness" of the photographs, that only one witness was able to identify the defendant from them. Further, the facts surrounding the instant identification are strongly reminiscent of those in State v. Aguirre, 84 N.M. 376, 503 P.2d 1154 (1972), where the Supreme Court noted that ". . . the procedure followed could very properly suggest care on the part of the officer in making certain the identification by the victim was a correct one. . . ." We accordingly hold that the photo array was not so unduly suggestive as to taint any subsequent identification. State v. Aguirre, supra.

The second source of impermissible taint alleged was the procedures followed with regard to the preliminary hearing. The witnesses were subpoenaed to attend the preliminary hearing. None, with the exception of Mr. Hicks, were called to testify at the hearing. Yet the witnesses were allowed to observe Mr. Hicks identify the defendant as the robber. Defendant contends that it is difficult to imagine a procedure whereby a tainted identification is more likely. While we may tend to agree with the defendant, we find it unnecessary to decide the issue in the instant case since any suggestiveness generated by

the procedures followed at the preliminary hearing did not taint the identification by the two remaining witnesses of whose testimony defendant complains—Mrs. Blackwood and Mrs. Julianto.

Defendant admits that Mrs. Blackwood did not attend the preliminary hearing. Thus, it is difficult to see how any alleged suggestiveness could apply to her. Her in-court identification of the defendant was wholly independent of the preliminary hearing. Mrs. Julianto testified at trial that she saw defendant when he entered the pawn shop, that on his orders she opened the cash register and that at the preliminary hearing she saw and recognized the defendant in the lobby of the court house prior to the time the hearing took place. Defendant makes no claim that the confrontation between the defendant and Mrs. Julianto prior to the hearing was due to any design or arrangement on the part of the state to suggest an identification. His contention is limited to the identification of the defendant by Mr. Hicks during the actual hearing. By that time Mrs. Julianto had already identified the defendant in a manner held to be permissible in State v. Turner, 81 N.M. 571, 469 P.2d 720 (Ct.App.1970). Defendant's first point must fail.

(2) *Admission of Out-of-court Statements*

Defendant contends that the admission into evidence of certain out-of-court statements was unauthorized by our Rules of Evidence, §§ 20-4-101 through 20-4-1102, N.M.S.A.1953 (Repl.Vol. 4, 1970, Supp. 1973), and denied him his constitutional right to confront the witnesses against him. We agree with the defendant that the admission of the statements was unauthorized by the Rules of Evidence and hence do not reach his constitutional claim.

It appeared that one of the items taken from the pawn shop during the robbery was a pistol with a known serial number. This gun later found its way into the hands of Derill Gleim. Approximately a week after the robbery, Gleim met Quill Bradley, a mutual acquaintance of both Gleim and the defendant. Gleim asked Bradley to buy him some .45 caliber shells, which Bradley did. Gleim then asked Bradley if he wanted to see a pistol that Gleim had just obtained. When Bradley responded in the affirmative, Gleim took Bradley home to show him a pistol. Gleim told Bradley he obtained it from the defendant who, in turn, had obtained it from the pawn shop. The state called Gleim as a witness, but Gleim refused to testify on Fifth Amendment grounds because of charges pending against him. The court declared Gleim to be unavailable. The state then called Bradley to testify to the conversation he had with Gleim. The court allowed the testimony, over objection. It was later shown by the evidence that the gun Gleim claimed to have gotten from the defendant was one of the items taken from the pawn shop during the robbery.

■ The state sought to justify the admission of the Bradley testimony under Rules of Evidence 804(b)(4), § 20-4-804(b)(4), supra, as a declaration against interest. The defendant initially contends that Gleim's assertion of his privilege against self-incrimination does not render him unavailable under Rules of Evidence 804(a)(1), § 20-4-804(a)(1), supra. The weight of authority is against defendant's contention. McCormick on Evidence, § 253 (2d ed., 1972); Annot., 45 A.L.R.2d 1354 (1956). We hold that where, as in the case at bar, the court has ruled that a witness is exempted from testifying concerning a statement made by him, then that person is unavailable within the meaning of Rules of Evidence 804(a)(1), supra.

■ The defendant next contends that the exception to Rules of Evidence 804(a), supra, which states that a person is not unavailable if his refusal to testify is due to the procurement of the proponent of his statement, applies here. It is defendant's argument that the state's threat of prosecution is such procurement. In the absence of an immunity statute, the state was un-

able to guarantee that Gleim would not be prosecuted. Gleim's claim of privilege was therefore not due to the procurement of the proponent of his statement.

We now come to the crucial inquiry on this appeal, i. e. whether the statements of Gleim, as related by Bradley, were against Gleim's interest. The statements were assertedly against Gleim's penal interest in that they tended to subject him to criminal liability. If the facts bear this out, the statements would be admissible under Rules of Evidence 804(b)(4), supra. The state, at trial, advanced three reasons why Gleim's statements to Bradley would be against his interest: (1) that as part of the conversation, Gleim admitted participation in another robbery, (2) that possession of the gun and ammunition would be against federal law since Gleim is a convicted felon and (3) that the statements could be used to convict Gleim of the crime of knowingly receiving stolen property.

We first note that the first reason was apparently abandoned and that nowhere in the record was a proper foundation laid in order for the state to rely on the second or third reasons. There is no evidence that Gleim is a convicted felon and there is no evidence that Gleim knew the gun to be stolen. All Bradley testified to was that Gleim had a gun that he said he got from the defendant and said the defendant got from the Jewel Box Pawn Shop. We note also that there was no issue as to how Gleim knew that the defendant got the gun from the pawn shop. Thus it appears that Gleim's statements were inadmissible for lack of a foundation. However, we reach the merits of defendant's objection because we assume that the state will lay a proper foundation upon retrial.

■ The statements were introduced solely for the purpose of tracing the pistol stolen in the robbery to the defendant. Thus the operative portion of Gleim's statements was, "I obtained this gun from the defendant." Clearly, this was an out-of-court statement and it was offered in evidence only to prove the truth of the matter asserted, that Gleim obtained the pistol in question from the defendant. It was hearsay. Rules of Evidence 801(c), § 20–4–801(c), supra.

■ The danger of admitting hearsay into evidence is that it is not subject to the usual tests that can be applied to ascertain its truthfulness by cross-examination of the declarant. McCormick on Evidence, § 245 (2d ed. 1972). It is not given under oath nor is the declarant subject to cross-examination or to the penalties of perjury. Chiordi v. Jernigan, 46 N.M. 396, 129 P.2d 640 (1942). However, there are exceptions to the hearsay rule which depend on circumstantial guarantees of reliability to substitute for the oath, cross-examination and penalties of perjury. Guarantees of reliability are and must be the key to open the door to the exceptions. In the declaration against interest exception, it is thought that this special trustworthiness is supplied by the fact that people will ordinarily not state facts against their interest unless those facts are true. McCormick on Evidence, § 276 (2d ed.1972). Hence, it is logical that in order to circumvent the usual requirement that testimony be given under oath and subject to cross-examination and the penalties of perjury, the precise matter offered for its truth ought to be against the interest of the declarant. It is not enough that some collateral portion of the conversation is against the interest of the declarant; otherwise the circumstantial indicia of trustworthiness are not present to guarantee the reliability of the very matter being offered.

In the instant case, the identification of the defendant as the person from whom Gleim obtained the gun is irrelevant to the subjection of Gleim to any criminal liability. If the state operates under its second theory of admissibility, the bare fact of possession of the gun and ammunition is sufficient to subject Gleim to criminal penalties. Similarly if the state operates under its third theory, all that is necessary is that Gleim be in possession of a gun that

he knew to be stolen. In both cases, the identity of the donor of the gun and/or identity of the person who stole it has no bearing on the very issue which makes Gleim's statement admissible, i. e. his subjection to criminal liability. Conversely, the portion of the statements which are against his interest are irrelevant to the prosecution of the defendant. A fortiori, this would be the case if the state were to proceed under its first theory of admissibility.

To sum up, in order for a statement to qualify as an exception to the hearsay rule, there must be a nexus between the assertion relevant to the issues in the given case and the circumstances which qualify the assertion as an exception to the hearsay rule. That nexus being absent in the instant case, we can only conclude that the testimony of Quill Bradley was inadmissible and the court erred in admitting it.

The state contends that the error was harmless under State v. Gunthorpe, 81 N.M. 515, 469 P.2d 160 (Ct. App.1970), cert. denied, 401 U.S. 941, 91 S.Ct. 943, 28 L.Ed.2d 221 (1971). In order for us to say that the error was harmless, we must also be able to say that the other evidence was so overwhelming that the improperly admitted evidence did not contribute to the conviction. See State v. Thurman, 84 N.M. 5, 498 P.2d 697 (Ct.App. 1972); State v. Lopez, 80 N.M. 599, 458 P.2d 851 (Ct.App.1969).

The state presented two lines of evidence to prove defendant's guilt. One was direct evidence by the testimony of eyewitnesses. The other was circumstantial evidence by proving that defendant possessed an item stolen in the robbery. Without the testimony of Bradley, the state's whole line of circumstantial evidence would have to be discarded. While the remaining direct evidence would have been substantial under our cases to support the conviction, see State v. Seaton, 86 N.M. 498, 525 P.2d 858 (1974), it must be noted that three eyewit-

nesses positively identified the defendant but four eyewitnesses were unable to do so. The defendant also presented a rather lengthy alibi defense. We cannot therefore say the circumstantial evidence did not .contribute to the conviction and the judgment must accordingly be reversed.

Reversed and remanded for a new trial.

It is so ordered.

HERNANDEZ and LOPEZ, JJ., concur.