722 P.2d 697

STATE of New Mexico,
Plaintiff-Appellee,

v.

Antonio PADILLA,
Defendant-Appellant.

No. 8785.

Court of Appeals of New Mexico.

July 1, 1986.
Certiorari Denied July 23, 1986.

Jacquelyn Robins, Chief Public Defender, David Stafford, Appellate Defender, Santa Fe, for defendant-appellant.

Paul G. Bardacke, Atty. Gen., Barbara F. Green, Asst. Atty. Gen., Santa Fe, for plaintiff-appellee.

## OPINION

BIVINS, Judge.

A grand jury indictment charged defendant and his two companions with murder, conspiracy to commit murder, and two counts of aggravated assault. While the evidence would have supported convictions on any one of those charges, the jury, for whatever reason, convicted defendant only

of voluntary manslaughter under an instruction as to that lesser offense. The trial court gave that instruction at defendant's request and over the state's objection. This appeal solely concerns defendant.

Defendant appeals from his conviction of voluntary manslaughter claiming, contrary to his position at trial, that the evidence failed to raise an issue as to provocation, an essential element of voluntary manslaughter, and, therefore, the trial court erred in giving the very instruction defendant himself urged. His argument is threefold and simple: Because defendant and his companions chased down and shot the victim, the conviction of voluntary manslaughter, without a showing of provocation, constituted fundamental error and must be set aside. And because fundamental error cannot be waived, defendant's inconsistent position and his affirmative action in requesting the instruction on voluntary manslaughter will not change that result. And because defendant was acquitted of charges of murder, conspiracy to commit murder and aggravated assault, double jeopardy precludes retrial of those charges, and, therefore, defendant must be discharged.

While we agree that the evidence will not support an instruction on voluntary manslaughter, we hold that because no state action was involved in the giving of that instruction under the circumstances of this case, defendant was not denied due process. Therefore, no fundamental error occurred. On that basis, we affirm defendant's conviction.

■ We first discuss whether substantial evidence supports the conviction. In doing so, we must view the evidence in the light most favorable to the conviction, resolving all conflicts therein and indulging all permissible inferences in favor of the verdict. *State v. Lankford*, 92 N.M. 1, 582 P.2d 378 (1978). The test is whether substantial evidence exists of either a direct or circumstantial nature to support a verdict of guilt beyond a reasonable doubt with respect to every essential element of the crime. *State v. Brown*, 100 N.M. 726, 676 P.2d 253 (1984). If the evidence must be buttressed by surmise and conjecture rather than logical inference, the conviction cannot stand. *State v. Vigil*, 87 N.M. 345, 533 P.2d 578 (1975).

On November 29, 1984, at about 9:30 p.m., defendant, along with his brother and a female companion, went to the apartment of the victim, a heroin dealer, to obtain heroin. Hearing the people drive up, the victim asked his girl friend to get his gun, which he tucked into his pants before opening the door. After a brief conversation at the doorway, the victim, defendant and his companions went outside where an argument ensued. Defendant affixed a silencer to his pistol. The three visitors tried to force the victim into their vehicle, but he escaped and went back to his apartment, attempting to close the door behind him. Defendant and his companions pushed the door open; there was a scuffle; and defendant shot the victim just as the victim said: "If you're going to shoot me, shoot me." Defendant and his companions fled in their pickup truck. The victim's girl friend went for help.

■ To support a conviction of voluntary manslaughter, there must be evidence that the killing was committed during a sudden quarrel or in the heat of passion. *Smith v. State*, 89 N.M. 770, 558 P.2d 39 (1976). As a general rule, however, there also must be evidence of acts of provocation by the victim that do not result from intentional acts of defendant. *See State v. Manus*, 93 N.M. 95, 597 P.2d 280 (1979). The circumstances must be such to arouse strong emotions. "The phrase 'heat of passion' includes a killing in circumstances which arouse anger, fear, rage, sudden resentment, terror or other extreme emotions. Such killings are held to be upon 'sufficient provocation'". *State v. Smith*, 89 N.M. 777, 779, 558 P.2d 46, 48 (Ct.App.1976), *rev'd on other grounds*, 89 N.M. 770, 558 P.2d 39 (1976). "The provocation must be such as would affect the ability to reason and [would] cause a temporary loss of self control in an ordinary person of average

disposition." NMSA 1978, UJI Crim. 2.22 (Repl.Pamp.1982).

In this case, defendant and his companions argued with the victim in front of the victim's home and pursued him when he ran back into his apartment. The victim tried to close the door, but defendant and his companions forced their way inside. There was a scuffle inside just before the victim was shot.

■ The evidence does not support a logical inference that the victim provoked defendant to an extent that affected defendant's ability to reason and caused a temporary loss of self-control. Any such determination could be based only on conjecture. Further, even assuming sufficient provocation on the part of the victim, the logical inference is that it resulted from the acts of defendant and his companions in intentionally pursuing the victim into his apartment.

According to our supreme court's holding in *Smith v. State*, a voluntary manslaughter conviction must be reversed where there is insufficient evidence of provocation. The holding dictated that a jury may not return a verdict of guilty for the commission of a crime where there is no evidence that such crime was committed. To do so constituted fundamental error. *Id.*

■ This brings us to the critical inquiry: whether fundamental error occurred under the circumstances of this case where defendant, by his own actions in arguing for and obtaining an erroneous instruction, created the error. We hold it did not.

The state argues that defendant is precluded on appeal from even raising the issue of insufficiency of evidence of provocation because he requested the instruction on voluntary manslaughter. Other jurisdictions, under circumstances similar to this case, have refused to review invited error. *See, e.g., People v. Curwick*, 33 Ill.App.3d 757, 338 N.E.2d 468 (1975); *State v. Heald*, 292 A.2d 200 (Me.1972). This court also has refused, under different circumstances, to review invited error.

*Proper v. Mowry*, 90 N.M. 710, 568 P.2d 236 (Ct.App.1977). *See also State v. Ross*, 100 N.M. 48, 665 P.2d 310 (Ct.App.1983) (defendant who urged court to adopt an instruction on the basis that such offense was a lesser included offense of the crime charged may not claim on appeal that his conviction of the lesser offense, based on substantial evidence, was error); *State v. Mills*, 94 N.M. 17, 606 P.2d 1111 (Ct.App. 1980) (defendant may not complain of form of instruction he requested).

The state's argument, however, is incomplete. The state fails to acknowledge the implication of claimed fundamental error, and the question of fundamental error was not before us in the cases cited above. Similarly, the foreign cases were not required to reach the fundamental error issue. This is due, no doubt, to the refusal by the majority of jurisdictions to hold that the absence of sufficient evidence of provocation will invalidate a voluntary manslaughter conviction. *State v. Heald;* Annot., 21 A.L.R. 603, 622 (1922); Annot., 27 A.L.R. 1097, 1100 (1923); Annot., 102 A.L.R. 1019, 1026 (1936). The rationale for the majority rule, according to *State v. Heald*, is that "a defendant cannot be heard to complain of an error which works to his advantage." 292 A.2d at 201.

■ New Mexico, however, follows a different rule, holding that a conviction of voluntary manslaughter without sufficient proof of provocation cannot stand. *Smith v. State*. This court is bound by decisions of the supreme court. *Alexander v. Delgado*, 84 N.M. 717, 507 P.2d 778 (1973).

We believe, however, that *Smith v. State* is distinguishable and that the circumstances of the present case permit a holding of no fundamental error. In *Smith v. State*, the trial court, either on its own or at the state's request, gave the erroneous instruction on voluntary manslaughter. NMSA 1978, UJI Crim. 2.20 (Repl.Pamp.1982). While not an issue, the supreme court noted "that the defense made no objection to the giving of such an instruction at the trial." 89 N.M. at 775, 558 P.2d at 44. In *Smith v. State*, therefore, it was state ac-

tion which resulted in the giving of the erroneous instruction; in the present case it was defendant's action.

Particularly on point and persuasive is *State v. Lewis*, 15 Wash.App. 172, 548 P.2d 587 (1976). In *Lewis*, defendant requested, over the state's objection, that the trial court instruct the jury on third-degree assault, and the jury returned a verdict of guilty of third-degree assault. The defendant appealed, arguing that the court erred in giving defendant's requested instruction because the evidence did not support his conviction. The appellate court basically agreed with the defendant but held that the error did not merit reversal of the defendant's conviction.

The court articulated, as follows, the basis for its refusal to review the issue on appeal:

> The instant case is unusual in that it does not arise from the giving of the prosecution's instructions over a defense objection ... nor from a refusal to give a requested defense instruction .... Rather, we have the unique situation of the defendant himself requesting the instructions and, of course, not objecting to them at trial so they became the law of the case.

15 Wash.App. at 176, 548 P.2d at 590 (citations omitted); *People v. Curwick*.

We have the same situation before us. This is not a case where the prosecution's voluntary manslaughter instruction was given over defendant's objection nor is it a case where the trial court refused to give an instruction tendered by defendant. In our case, not only did defendant tender the voluntary manslaughter instruction, but he argued, against the state's objection, that the evidence would support a finding of provocation. Ultimately, the trial court allowed defendant's theory of the case to go to the jury.

As in *Lewis*, however, this case goes one step beyond whether an invited error generally will preclude appellate review. In this case, as in *Lewis*, we must determine whether an invited error of constitutional dimension will merit reversal. The court,

in *Lewis*, correctly answered that question in the negative holding:

> [W]hen a defendant in the procedural setting of a criminal trial makes a tactical choice in pursuit of some real or hoped for advantage, he may not later urge his own action as a ground for reversing his conviction even though he may have acted to deprive himself of some constitutional right. A criminal defendant is entitled to a fair trial *from the state*, including due process. He is not denied due process *by the state* when such denial results from his own act, nor may the state be required to protect him from himself.

15 Wash.App. at 177, 548 P.2d at 591 (emphasis by the court).

■ Likewise, in our case, defendant took the initiative. The state did not urge the court to instruct the jury on voluntary manslaughter. Defendant submitted the instruction and argued that the evidence supported the submission of the instruction. Defendant was not denied due process by the state; defendant cannot now seek to undo that which he sought to accomplish below. As the court in *Lewis* aptly described the situation:

> It is obvious that defense counsel employed a tactical maneuver in what then appeared to be the best interest of his client. The evidence was substantial, if not overwhelming, that ... [defendant was guilty]. Facing what appeared to be an almost certain felony conviction, it would clearly be to defendant's advantage to attempt to reduce the gravity of the offense .... Having gambled and won in the face of unfriendly odds, the defendant should not now be heard to complain of his victory, however hollow it might now appear to be.

15 Wash.App. at 176, 548 P.2d at 591.

■ As the dissent notes, we do equate the notions of fundamental error to principles of due process. In order to resolve the case before us, we must acknowledge the interrelationship of fundamental error and fundamental rights. The doc-

trine of fundamental error empowers us, in part, to shield an accused's fundamental rights. *State v. Garcia,* 46 N.M. 302, 128 P.2d 459 (1942). Among those fundamental rights is the right to have the evidence support the verdict. *State v. Losolla,* 84 N.M. 151, 500 P.2d 436 (Ct.App.1972). Unlike fundamental errors, however, fundamental rights can be waived. *State v. Sanchez,* 58 N.M. 77, 265 P.2d 684 (1954). Defendant here waived his right. Thus, although the *Lewis* court did not phrase its holding in terms of the absence of fundamental error, its reasoning supports our conclusion that no fundamental error occurred here. The fundamental error doctrine only applies where the state, or the court, generates the instruction which results in a conviction unsupported by the evidence.

■ Additionally, this case provides an inappropriate setting for an application of the doctrine of fundamental error. Fundamental errors are found in cases where the innocence of the defendant appears indisputable or the question of guilt is so doubtful that it would shock the conscience to permit the conviction to stand. *State v. Gomez,* 82 N.M. 333, 481 P.2d 412 (Ct.App. 1971). The fundamental error rule guards against the actual corruption of justice. *State v. Rogers,* 80 N.M. 230, 453 P.2d 593 (Ct.App.1969). To reverse defendant's conviction here would actually contravene that which the doctrine of fundamental error seeks to protect, namely, the orderly and equitable administration of justice. In essence, we would sanction defendant's misuse of the system of justice by allowing him to seek instructions conforming to his theory of the case; to argue the validity of those instructions; and, finally, on appeal, to contend that the evidence did not support the giving of the instruction.[1] We refuse to "administer the rules of law so as to work an injustice in the name of justice." *State v. Heald,* 292 A.2d at 202.

Although dealing with a different issue, the recent United States Supreme Court decision in *Spaziano v. Florida,* 468 U.S. 447, 104 S.Ct. 3154, 82 L.Ed.2d 340 (1984), is instructive. In defendant's trial for first-degree murder, the Florida court stated that it would instruct the jury on lesser-included noncapital offenses if defendant would waive the statute of limitations, which had expired as to those offenses. Defendant refused, and the court instructed only on first-degree murder for which defendant was convicted. Defendant urged that *Beck v. Alabama,* 447 U.S. 625, 100 S.Ct. 2382, 63 L.Ed.2d 392 (1980), required reversal because of the trial court's refusal to instruct on the lesser-included offenses absent a waiver of the statute of limitations. Had the trial court in *Spaziano* given the lesser offenses instructions without a waiver, the jury could have convicted on one of the lesser offenses without knowing defendant could not be punished because of the expiration of the time limitations. The Supreme Court disapproved, stating:

> Beck [v. Alabama, 447 U.S. 625, 100 S.Ct. 2382, 65 L.Ed.2d 392 (1980)] does not require that the jury be tricked into believing that it has a choice of crimes for which to find the defendant guilty, if in reality there is no choice. Such a rule not only would undermine the public's confidence in the criminal justice system, but it would do a serious disservice to the goal of rationality on which the Beck rule is based.

468 U.S. at 456, 104 S.Ct. at 3160, 82 L.Ed. 2d at 349–50.

Defendant's reliance on *Smith v. State* is equally misplaced. To allow the jury to be tricked into believing that it could convict defendant of voluntary manslaughter, when in fact no evidence warranted a conviction of that offense, would not only undermine the public's confidence in the criminal justice system, but would also do disservice to that which the doctrine of fundamental error seeks to protect.

---

1. We note that if we reached a contrary holding, such might have the practical effect of sanctioning or even encouraging violations of the Code of Professional Responsibility. *See* NMSA 1978, Code of Prof.Resp.R. 7–102(A)(2), (5); 7–106(C)(1) (Repl.1985).

We affirm defendant's conviction.

**IT IS SO ORDERED.**

ALARID, J., concurs.

MINZNER, Judge (dissenting).

I respectfully dissent. I agree that there is insufficient evidence of provocation to support the conviction but am not persuaded that the doctrine of fundamental error does not apply. I believe that *Smith v. State*, 89 N.M. 770, 558 P.2d 39 (1976), mandates reversal.

The majority holds, in part, that the doctrine of fundamental error does not permit reversal of defendant's conviction, based on lack of substantial evidence, because the jury instruction resulting in the conviction was not requested by the state. I am not sure that state action is a prerequisite for fundamental error, but even if it is, the ultimate decision to give or refuse requested instructions has been entrusted to the trial court judge. *See* NMSA 1978, Crim. P.R. 40(k) (Repl.1985). Since the trial court judge instructs the jury, I would recognize the existence of state action if it is a prerequisite.

The majority appears to equate fundamental error with a denial of due process rights, which requires state action and which includes rights that can be waived. While I believe that the concept of due process will often be implicated when the doctrine of fundamental error must be applied, I understand fundamental error as a broader doctrine, which enables an appellate court to correct manifest injustice even in cases where the claim of error does not lie within an existing rule. *See State v. Buhr*, 82 N.M. 371, 482 P.2d 74 (Ct.App. 1971).

The doctrine of fundamental error in New Mexico is set out in *State v. Garcia*, 46 N.M. 302, 308–09, 128 P.2d 459, 462 (1942), *quoting in part State v. Garcia*, 19 N.M. 414, 143 P. 1012 (1914):

"There exists in every court, however, an inherent power to see that a man's fundamental rights are protected in every case. Where a man's fundamental rights have been violated, while he may be precluded by the terms of the statute or the rules of appellate procedure from insisting in this court upon relief from the same, this court has the power, in its discretion, to relieve him and to see that injustice is not done.

. . . .

... Error that is fundamental must be such error as goes to the foundation or basis of a defendant's rights or must go to the foundation of the case or take from the defendant a right which was essential to his defense and which no court could or ought to permit him to waive.

The majority in effect holds that defendant waived his right to object to lack of substantial evidence by offering the instruction on voluntary manslaughter, and because he waived that right, no fundamental error occurred. I would analyze the issues differently; first, we must determine whether fundamental error is involved and then, if not, we may determine whether the relevant right was waived. We ought not limit our discretion to correct fundamental error in an appropriate case.

Whether or not the facts of this case show "fundamental error" as defined in *Garcia*, I am persuaded that *Smith v. State*, 89 N.M. 770, 558 P.2d 39 (1976), recognizes a basic right that defendant cannot waive. *Cf. United States v. Morris*, 612 F.2d 483 (10th Cir.1979); *United States v. Scalzitti*, 578 F.2d 507 (3rd Cir.1978) (requirement that a criminal verdict must be unanimous is of overriding importance and may not be waived by the parties). Our courts have held that evidence must establish every essential element of the crime charged, and whatever is essential must affirmatively appear from the record. *State v. Losolla*, 84 N.M. 151, 500 P.2d 436 (Ct.App.1972). The supreme court has said, further, that "it is a *cardinal principle* of criminal law that a jury may not be permitted to return a verdict of guilty for the commission of a particular crime when there is no evidence that such a crime was

committed." *Smith v. State,* 89 N.M. at 775, 558 P.2d at 44 (1976) (emphasis added).

The majority rightly suggests that we ought not apply fundamental error to situations in which the values that doctrine protects are not involved. Nevertheless, I cannot distinguish between the situation in which a defendant fails to object to an instruction submitted by the state, *Smith v. State,* and the situation in which defense counsel tenders an instruction. If fundamental error or something analogous is applicable to the former situation, it is applicable to the latter.

Although a number of jurisdictions have upheld convictions on facts similar to this case, the opinions reason that a defendant may not complain of having been convicted of a lesser offense when the evidence showed he was guilty of a higher offense. *See, e.g., People v. Gottman,* 64 Cal.App.3d 775, 134 Cal.Rptr. 834 (1976); *State v. Mower,* 317 A.2d 807 (Me.1974); *Smith v. State,* 222 Ark. 650, 262 S.W.2d 272 (1953); *Blankenship v. Commonwealth,* 193 Va. 587, 70 S.E.2d 335 (1952). The underlying rationale has been that any error benefited the defendant, who should not be allowed to complain when the jury has shown mercy. This court's opinion in *State v. Smith,* 89 N.M. 777, 558 P.2d 46, *rev'd on other grounds,* 89 N.M. 770, 558 P.2d 39 (1976), however, cites a number of cases in which our supreme court rejected that rationale. 89 N.M. at 781–82, 558 P.2d at 50–51. The body of precedent from other jurisdictions is also less persuasive as a result of the supreme court's decision that voluntary manslaughter is not a necessarily included offense of murder. *Smith v. State.*

*Smith v. State* held that when the facts establish murder, but cannot support a conviction of voluntary manslaughter, upon acquittal of murder and conviction of voluntary manslaughter, the conviction must be reversed and defendant dismissed. Since this court must follow applicable precedents of the supreme court, *State v. Scott,* 90 N.M. 256, 561 P.2d 1349 (Ct.App.), *cert. denied,* 90 N.M. 637, 567 P.2d 486 (1977), I would reverse defendant's conviction and remand with instructions that the charge be dismissed.