875 P.2d 1119

**STATE of New Mexico,
Plaintiff–Appellee,**

v.

**Henry YOUNG, Defendant–Appellant.**

**No. 14315.**

Court of Appeals of New Mexico.

April 20, 1994.

Certiorari Denied May 31, 1994.

Tom Udall, Atty. Gen., Bill Primm, Asst Atty. Gen., Santa Fe, for plaintiff-appellee.

Douglas W. Baker, Santa Fe, for defendant-appellant.

*OPINION*

APODACA, Judge.

Defendant was charged under indictment with an open count of murder. After a jury trial, he was convicted of voluntary manslaughter in violation of NMSA 1978, Section 30–2–3 (Repl.Pamp.1984). He appeals his conviction, raising the following issues: (1) whether the evidence was sufficient to sup-port his conviction; (2) whether the trial court committed reversible error by admitting Defendant's post-arraignment statement; (3) whether the trial court committed reversible error by admitting Defendant's three pre-arraignment statements; (4) whether the trial court erroneously refused to give two uniform jury instructions requested by Defendant. Because we conclude that the trial court erred under Issue 2, we reverse Defendant's conviction and remand for a new trial. We address Issue 1 because, if we were to reverse Defendant's conviction on the basis that there was not substantial evidence to support the conviction, Defendant could not be retried. We remand on Issue 3 for the trial court's reconsideration consistent with this opinion. In light of our disposition, we need not address Issue 4.

**BACKGROUND**

Defendant's conviction arose out of the death of Pamela Mass, Defendant's girlfriend. David Bigelow, a friend of Defendant's, found her body on Tuesday, November 26, 1991, in an adobe addition to the trailer in which Defendant and Mass lived. Mass had been dead since Saturday. Her heart blood contained a normally lethal amount of phenobarbital; additional undigested phenobarbital was in her stomach. Her blood alcohol content was .088%. There was also evidence of fresh bruises on her face and body, and fresh internal injuries, including bruising around her right and left ribs and her kidneys. In addition, there was a ligature mark on her neck, consistent with strangulation. At trial, the State's theory was that Defendant strangled Mass during a fight; the defense theory was that she died of a drug overdose. Additional facts will be discussed as relevant to the issues.

**DISCUSSION**

1. *Sufficiency of the Evidence.*

■ Defendant contends that the evidence was insufficient to support his conviction for voluntary manslaughter because there was insufficient evidence that the victim provoked him into killing her "upon a sudden quarrel or in the heat of passion." *See* § 30–2–3. We decline to consider the sufficiency of the evidence to support Defendant's manslaugh-

ter conviction because the instruction on voluntary manslaughter was given at Defendant's request. Although we agree that generally there must be evidence of sufficient provocation by the victim to support a conviction of voluntary manslaughter, *see State v. Benavides,* 94 N.M. 706, 708, 616 P.2d 419, 421 (1980), New Mexico courts have consistently refused to review such claims where the trial court instructed the jury as the defendant requested, *see State v. Boeglin,* 105 N.M. 247, 252, 731 P.2d 943, 948 (1987) (defendant knowingly, intelligently, and voluntarily waived his right to have the jury instructed on a lesser included offense where he requested the court not to give the instruction); *State v. Hamilton,* 107 N.M. 186, 189, 754 P.2d 857, 860 (Ct.App.) (defendant requested trial court to instruct on uncharged offense that was not lesser included offense), *cert. denied,* 107 N.M. 132, 753 P.2d 1320 (1988); *State v. Padilla,* 104 N.M. 446, 722 P.2d 697 (Ct.App.) (defendant's conviction of voluntary manslaughter, where defendant had requested the relevant jury instruction, did not amount to fundamental error even though the evidence did not support the instruction), *cert. denied,* 104 N.M. 378, 721 P.2d 1309 (1986). At trial, Defendant obviously believed that the evidence supported an instruction on voluntary manslaughter and that such an instruction would benefit him. Under the circumstances of this case, we similarly hold that Defendant may not claim on appeal that an instruction given at his request was error.

Defendant acknowledges that the instruction on voluntary manslaughter was given at his request, and he also recognizes the authority contrary to his position. Nonetheless, he argues that this Court should reach a different result from that reached in *Padilla* and similar cases for two reasons: (1) unlike the situation in *Padilla,* the State here also requested the instruction and thus, he contends, fundamental error analysis applies; and (2) the continued validity of the analysis in *Padilla* is in question. We are not persuaded by either argument.

This case is analogous to *State v. Clark,* 108 N.M. 288, 772 P.2d 322, *cert. denied,* 493 U.S. 923, 110 S.Ct. 291, 107 L.Ed.2d 271

(1989). In that case, the defendant had argued as part of his case-in-chief the question of the defendant's life sentence and possible release. *Id.* at 297, 772 P.2d at 331. The prosecutor, in rebuttal, pointed out factors that were relevant to the possibility of a defendant's release after being sentenced to life imprisonment. *Id.* at 298, 772 P.2d at 332. Our Supreme Court held that, under such circumstances, the doctrine of fundamental error did not apply. *Id.* at 297–98, 772 P.2d at 331–32. Relying on *Padilla,* our Supreme Court further stated that "[t]he doctrine [of fundamental error] has no application in cases where the defendant by his own actions created the error, where to invoke the doctrine would contravene that which the doctrine seeks to protect, namely, the orderly and equitable administration of justice." *Id.* at 298, 772 P.2d at 332. We agree with this reasoning and with the reasoning of *Padilla* that to allow a defendant to invite error and to subsequently complain about that very error would subvert the orderly and equitable administration of justice. *See Padilla,* 104 N.M. at 451, 722 P.2d at 702; *cf. Cox v. Cox,* 108 N.M. 598, 603, 775 P.2d 1315, 1320 (Ct.App.) (invited error will not be a basis for reversal), *cert. denied,* 108 N.M. 624, 776 P.2d 846 (1989).

Additionally, although Defendant points to Justice Ransom's dissent in *Clark,* 108 N.M. at 314, 772 P.2d at 348, as raising a question concerning the continued validity of *Padilla*'s holding, in light of the majority's affirmance of *Padilla* in *Clark,* 108 N.M. at 298, 772 P.2d at 332, we are not inclined to overrule *Padilla.*

2. *Admission of Defendant's Pre-arraignment Statements.*

Defendant argues that three statements he made to police officers should not have been admitted because, due to his extreme intoxication and his incommunicado incarceration, he could not have knowingly, voluntarily, and intelligently waived his *Miranda* rights. Because it appears that the trial court applied an incorrect legal standard in its determination of this issue, we remand for reconsideration.

After Bigelow found the victim's body, Sergeant Ben Encinias arrived at the trailer at about 9 p.m. and found Defendant unconscious on the sofa with a blanket over his head. Encinias handcuffed Defendant and placed him in a sheriff's car. Encinias testified that Defendant was "very intoxicated."

Captain Ron Madrid, who was in charge of the investigation, testified that he later found Defendant "asleep" in the back seat of the sheriff's car. Madrid woke up Defendant in order to read him his *Miranda* rights. Defendant said he understood. Madrid testified that he stopped the interview because Defendant "seemed very intoxicated." Madrid further testified, over defense counsel's objection, that, when he asked Defendant "[w]hat happened to Pam?", Defendant told him that "[s]he had a heart attack."

At 12:47 a.m., Detective Frank Lawrence went to the sheriff's car, where Defendant was still being held, to interview Defendant. Lawrence testified that he found Defendant awake and that he smelled intoxicating beverages on Defendant. Lawrence did not read Defendant his *Miranda* warnings because Madrid had already done so. Lawrence further testified that Defendant "was speaking coherently, he seemed to understand my questions," but acknowledged that Defendant talked "somewhat" as though intoxicated and "appeared intoxicated to me." Over defense counsel's objection that Defendant could not have voluntarily waived his rights due to his physical condition, Lawrence was allowed to testify as to Defendant's statement to him. Lawrence stated that Defendant told him that Mass had gone into the adobe addition late Monday night or early Tuesday morning to defecate and that he found her Tuesday morning covered by a carpet. When Lawrence asked about the marks on Mass' face and neck, Defendant told him that, because Mass was having a heart attack, Defendant had slapped her on each side of her face and struck her chest.

Defendant later gave a third statement at the sheriff's office at 3:25 a.m. He had been taken to a hospital, where a sample of his blood was drawn and analyzed. At the time Defendant was taken to the hospital, his blood alcohol level was .31%. He had been held in the sheriff's car, handcuffed, for five-and-one-half hours before being taken to the hospital. At the time the interview was begun, Defendant still smelled of alcohol. Lawrence testified he thought that Defendant's speech was fine, and Madrid stated that Defendant was "a lot more alert." Madrid testified that he advised Defendant of his *Miranda* rights and that Defendant stated that he understood. Neither Madrid nor Lawrence testified that Defendant explicitly waived his rights. Defendant then gave his third statement, which, although similar to his earlier statements, was also significantly different. He told the officers that, when Mass had her heart attack, he not only struck her, but he also gave her mouth-to-mouth resuscitation. He said that when Mass left to defecate, she rolled herself up in the rug. When Madrid told Defendant that Mass had not died of a heart attack, Defendant stated that "Dennis Butts probably murdered her."

■ When seeking to admit at trial a defendant's statement made in response to custodial interrogation, the State bears "a heavy burden" of proving that the defendant made an intelligent, knowing, and voluntary waiver of his rights. *Miranda v. Arizona*, 384 U.S. 436, 475, 86 S.Ct. 1602, 1628, 16 L.Ed.2d 694 (1966); *see also State v. Boeglin*, 100 N.M. 127, 132, 666 P.2d 1274, 1279 (Ct. App.1983). The trial court's decision will not be disturbed on appeal if it is supported by substantial evidence, unless predicated on a mistake of law. *Boeglin*, 100 N.M. at 132, 666 P.2d at 1279. Determination of whether a defendant validly waived his rights depends upon the totality of the circumstances, including the defendant's mental and physical condition and his conduct. *Id.* This Court has held that extreme intoxication is inconsistent with a waiver of rights. *State v. Bramlett*, 94 N.M. 263, 268, 609 P.2d 345, 350 (Ct.App.1980). Defendant points to the extensive evidence of his extreme intoxication as evidence that he could not have knowingly and voluntarily waived his rights.

On the other hand, the State contends that substantial evidence supported the trial court's ruling. *See State v. Hamilton*, 104 N.M. 614, 618, 725 P.2d 590, 594 (Ct.App.

1986). The State concedes that "the evidence at trial left no doubt that [Defendant] was under the influence of alcohol to some degree." Nonetheless, the State contends that the evidence proved that, despite Defendant's "high blood alcohol level," Defendant could think clearly and respond to questions. In support of this argument, the State points to the testimony of Bigelow that Defendant was not as intoxicated as Bigelow had previously seen him. Bigelow also testified that Defendant seemed to be speaking coherently and to have his intellectual faculties fairly unimpaired. Madrid and Lawrence also testified that, when they spoke with Defendant, he was speaking coherently and responding well to the questions. Lawrence testified that, at the hospital, Defendant was walking and his speech could be understood.

■ As occurred in *Bramlett*, it is difficult in this appeal to reconcile the evidence demonstrating that Defendant was extremely intoxicated with the same witnesses' conclusions that Defendant was in command of his faculties. More than five hours after Defendant was first taken into custody, his blood alcohol level was almost four times the level at which a person is currently presumed to be under the influence of intoxicating liquors for purposes of operating a vehicle. *See* NMSA 1978, § 66–8–110(C) (Cum.Supp.1993) (effective January 1, 1994). Although the evidence might support the trial court's ruling that waiver was proper, we nevertheless must remand because the trial court applied the wrong legal standard in deciding the issue. The trial court stated that Defendant's intoxication was irrelevant to the issue of waiver. The court was correct that voluntary intoxication is not a ground for finding that a waiver was "involuntary." *See People v. Clark*, 5 Cal.4th 950, 22 Cal.Rptr.2d 689, 711, 857 P.2d 1099, 1121 (1993) (en banc) (an involuntary waiver of *Miranda* rights is a product of government coercion); *People v. May*, 859 P.2d 879, 882–83 (Colo.1993) (en banc) (waiver of *Miranda* rights is involuntary only if coercive governmental conduct played a significant role in inducing inculpatory statement). But voluntary intoxication is relevant to determining whether a waiver was knowing and intelligent. *See Bramlett*, 94 N.M. at 268, 609 P.2d at 350; 1 Wayne R.

LaFave & Jerold H. Israel, *Criminal Procedure* § 6.9, at 527 (1984). On remand, the trial court shall consider the evidence of Defendant's intoxication in determining whether Defendant knowingly and intelligently waived his rights. *See Bramlett*, 94 N.M. at 268, 609 P.2d at 350.

■ The State also contends that, even if the admission of the statements was improper, the admission was not prejudicial because the defense elicited substantially the same information on cross-examination as the State had elicited on direct examination. Thus, the State concludes, the improperly admitted evidence was merely cumulative of evidence introduced without objection by the defense. We disagree. Defendant properly objected to the admission of the officers' testimony regarding his statements; we will not penalize Defendant for attempting to minimize the harm by cross-examining the officers concerning their testimony, after his objections had been denied. Additionally, admission of the statements was highly prejudicial since, by emphasizing inconsistencies among the various statements, the State was able to incriminate Defendant further. For these reasons, we hold that the admission of Defendant's three pre-arraignment statements must be reconsidered. Other arguments raised by Defendant were not properly raised below and are thus not considered here. *See* SCRA 1986, 12–216(A) (Repl. 1992). Defendant, of course, is not precluded from raising them on remand to the trial court.

### 3. Admission of Defendant's Post-arraignment Statement.

Defendant argues that he is entitled to a new trial because the trial court improperly admitted Defendant's statement given after his arraignment. He contends that the statement was elicited by law enforcement officers in violation of his constitutional rights because it was taken after he had invoked his right to counsel and without his having waived such right. We agree and reverse Defendant's conviction on this basis.

Between 1:00 and 1:30 p.m. on the day after his arrest, Defendant was arraigned in

magistrate court. Defendant introduced evidence at trial that he had invoked his right to counsel at his arraignment by requesting counsel on an "appointment order" form and by completing an "eligibility for legal assistance" form. After his arraignment, Defendant was returned to the detention center. At about 2:35 p.m., Lawrence arrived for another interview. Lawrence testified, "I questioned Mr. Young again."

In this interview, Defendant repeated to Lawrence that he had hit Mass on the night of her death in an attempt to perform CPR. When Lawrence asked Defendant to explain Mass' bruises, Defendant stated that a day or two earlier "she was bitching about money so [I] slapped her." Defendant did not immediately object to this testimony. After Defendant had introduced evidence of his invocation of his right to counsel at his arraignment, he moved twice for a jury instruction striking Lawrence's testimony concerning Defendant's statement. The trial court denied Defendant's motions.

The State contends that this issue is not properly before this Court because (1) Defendant's objection was not timely, and (2) Defendant's objection did not sufficiently alert the trial court to the argument Defendant now makes on appeal. For the reasons that follow, we reject the State's arguments and conclude that Defendant's objection was preserved.

■ A trial court's decision to admit evidence is reviewable on appeal where "a timely objection or motion to strike appears of record[.]" SCRA 1986, 11–103(A)(1). "[A]n objection can be timely if not made at the exact time the evidence is proffered so long as it is made when the opposing party may reasonably become aware of the grounds for objection for the first time." *State ex rel. Reynolds v. Rio Rancho Estates, Inc.*, 95 N.M. 560, 565, 624 P.2d 502, 507 (1981). In this case, the evidence supporting Defendant's motion was not adduced until Officer Richard Farrally, one of Defendant's witnesses, had testified about Defendant's invoking his right to counsel. Defendant moved for a jury instruction striking the statement, first, after resting Defendant's case but before the State completed its re-

buttal and, second, during the charging conference. The trial court apparently treated the two motions as timely because it denied the motions on their merits both times. We determine that the motions were timely for two reasons. First, because there was no basis for the motions before Farrally testified. Second, because, when the motions were made, there was still an opportunity for the trial court to grant the remedy requested.

■ The State also contends that Defendant's motions to strike were not based on the same argument urged on appeal. We disagree. On appeal, Defendant argues that, under *Michigan v. Jackson*, 475 U.S. 625, 634, 636, 106 S.Ct. 1404, 1411, 89 L.Ed.2d 631 (1986), his statement was inadmissible because it was elicited in response to police-initiated interrogation after Defendant had asserted his right to counsel and therefore any waiver of his right to counsel was invalid. At trial, Defendant pointed to the evidence of his invocation of his right to counsel and argued that the State had not sufficiently shown that Defendant had voluntarily waived his request for counsel. Additionally, he specifically relied on *Edwards v. Arizona*, 451 U.S. 477, 101 S.Ct. 1880, 68 L.Ed.2d 378 (1981). The State responded that Defendant had not asked that counsel be present, just that counsel be appointed. The trial court held that the statement was appropriately elicited, even though the statement was made after Defendant had requested counsel.

An objection must be sufficiently specific to fairly invoke the court's ruling. SCRA 12–216(A). However, the specific ground of the objection need not be stated if it is apparent from the context. SCRA 11–103(A)(1). Here it is apparent from the record and the trial court's rulings that Defendant's motions were sufficient to alert the trial court to Defendant's argument that his purported waiver was insufficient in light of his earlier invocation of his right to counsel. We thus hold that Defendant's objection was adequately preserved for appellate review. Therefore, we proceed to address the merits of Defendant's argument.

694

■ Defendant contends that the statement was improperly elicited by a police-initiated interrogation after he had invoked his right to counsel. The United States Supreme Court has held that, after an accused has invoked his right to counsel, the accused "is not subject to further interrogation by the authorities until counsel has been made available to him, unless the accused himself initiates further communication, exchanges, or conversations with the police." *Edwards,* 451 U.S. at 484–85, 101 S.Ct. at 1884–85. The Court has also held that, "if police initiate interrogation after a defendant's assertion, at an arraignment or similar proceeding, of his right to counsel, any waiver of the defendant's right to counsel for that police-initiated interrogation is invalid." *Jackson,* 475 U.S. at 636, 106 S.Ct. at 1411. Any statement made in response to police-initiated interrogation after a defendant has invoked his right to counsel violates the defendant's Sixth Amendment rights and must be suppressed. *Id.* at 635–36 n. 10, 106 S.Ct. at 1411 n. 10; U.S. Const. amend. VI.

■ The State contends that the record "does not clearly establish" that Defendant did not initiate the conversation at the detention center. We are not persuaded by the State's reliance on *Jenkins v. Leonardo,* 991 F.2d 1033, 1037 (2d Cir.), *cert. denied,* —— U.S. ——, 114 S.Ct. 231, 126 L.Ed.2d 186 (1993). As the State concedes, the State has the burden of establishing that Defendant waived his constitutional right, and every reasonable presumption against waiver is indulged. *Jackson,* 475 U.S. at 633, 106 S.Ct. at 1409 (quoting *Johnson v. Zerbst,* 304 U.S. 458, 464, 58 S.Ct. 1019, 1023, 82 L.Ed. 1461 (1938)). "Doubts must be resolved in favor of protecting the constitutional claim." *Id.* There is no evidence in the record that Defendant initiated the conversation; rather, the only evidence is Lawrence's testimony that "we left the autopsy, we returned to the—we went to the county jail and I questioned Mr. Young again." This evidence indicates that Lawrence initiated the interrogation of Defendant. If the record is unclear on this point, it was the State's burden to clarify the record to prove that Defendant waived his rights. *See id.* We therefore hold that Defendant's statement elicited at this post-arraignment interrogation was improperly admitted.

*Jenkins,* on which the State relies, does not persuade us to hold differently. In that case, the court determined that *Jackson* probably did not apply because the defendant had initiated the phone calls to the victim and knew she was cooperating with the police. *Jenkins,* 991 F.2d at 1037–38. The facts of *Jenkins* are therefore distinguishable.

■ The State next argues that, even if the statement was improperly admitted, it was harmless because it was cumulative of evidence that was admitted without objection, *see State v. Griscom,* 101 N.M. 377, 380, 683 P.2d 59, 62 (Ct.App.) (admission of cumulative evidence is not reversible error), *cert. denied,* 101 N.M. 362, 683 P.2d 44 (1984); or was introduced by Defendant, *see State v. Smith,* 92 N.M. 533, 540, 591 P.2d 664, 671 (1979) (defendant may not complain on appeal of evidence he introduced). We disagree. Although much of Defendant's statement at this interrogation repeated Defendant's earlier statements, it also contained the significantly different statement that Mass was bruised because, several days earlier, Defendant had slapped her when she "was bitching about money." Thus, the statement not only supported the State's theory of the case that Defendant and the victim had fought, but it was the only direct evidence of a recent fight. Additionally, the State was able to capitalize in closing argument on inconsistencies among the various statements that Defendant had given. We therefore hold that admission of this statement was not harmless error.

CONCLUSION

Because Defendant requested that the trial court instruct the jury on voluntary manslaughter, we decline to consider whether substantial evidence supported his conviction. However, because we hold that evidence of Defendant's post-arraignment statements were improperly admitted, we reverse Defendant's conviction and remand for a new trial. At trial, Defendant's post-arraignment statements shall not be admitted as evidence. On remand, in ruling on the admissibility of De-

fendant's pre-arraignment statements, the trial court shall apply the correct standard as discussed in this opinion.

**IT IS SO ORDERED.**

BLACK, J., concurs.

HARTZ, J., specially concurs.

HARTZ, Judge (specially concurring).

I join fully in Judge Apodaca's opinion for the panel. I write separately only to reenforce two points made in the opinion and to point out a troubling issue lurking on retrial but not discussed in the briefs of the parties.

First, although it is tempting to rule as a matter of law that anyone with Defendant's blood-alcohol level cannot knowingly and intelligently waive his rights under *Miranda*, there is substantial authority that a high blood-alcohol level is not dispositive when other evidence would support a finding of a proper waiver. *See, e.g., State v. Hall*, 111 Idaho 827, 727 P.2d 1255, 1261–62 (Ct.App. 1986) (.25 percent), *review denied*, (Jan. 16, 1987); *People v. Sleboda*, 166 Ill.App.3d 42, 116 Ill.Dec. 620, 626, 519 N.E.2d 512, 518 (1988) (.22 percent); *State v. Keith*, 628 A.2d 1247, 1250–51 (Vt.1993) (.203 percent); 1 Wayne R. LaFave & Jerold H. Israel, *Criminal Procedure* § 6.9, at 527 (1984).

Second, in rejecting the State's contention that Defendant's motion to strike his post-arraignment statement was untimely, I do not believe that we are violating the generally accepted requirement that an objection "must be made as soon as the applicability of it is known (or could reasonably have been known)." 1 John H. Wigmore, *Wigmore on Evidence* § 18, at 796 (Tillers rev. 1983); *accord* 1 Jack B. Weinstein & Margaret A. Berger, *Weinstein's Evidence* ¶ 103[02], at 103–17 (1993); *see* Wigmore, *supra*, § 18, at 817 (same requirement applies to motions to strike). Ordinarily, one would think that when Defendant's post-arraignment statement was offered into evidence he must have known that he had made his statement after he had requested counsel. Certainly, if defense counsel knew that the statement had been made after Defendant had requested counsel, he had an obligation to object immediately, rather than waiting until the intro-duction of evidence establishing Defendant's request for counsel. Here, however, it appears that defense counsel was not aware of Defendant's request for counsel. Evidence of the request was elicited by the State, not defense counsel, during cross-examination of Officer Richard Farrally. Perhaps defense counsel did not act promptly even after this testimony. As noted by the State's brief, two witnesses testified between the time that Farrally testified and the time that the district court heard argument on Defendant's motion to strike. Yet, it appears from the court's comments at the hearing on the motion that defense counsel had indicated at some unspecified previous time that he wished to be heard on a motion to strike.

Thus, on the record before us it is not clear precisely how promptly Defendant moved to strike after hearing Officer Farrally's testimony, nor is it clear whether Defendant "could reasonably have known" before Farrally's testimony that he had requested an attorney prior to his post-arraignment statements. In this context I find it dispositive that in district court the State did not contend that Defendant's motion was untimely. The State's response to the motion addressed only the merits. Likewise, the district court denied the motion on the merits, apparently treating the motion as timely. Given the ambiguous record and the State's failure to raise the point below, I would not dispose of the issue on the ground that the motion to strike was untimely.

Finally, I address the troubling issue lurking on remand. I hope that my comments convince others that the issue is one worthy of attention by the Uniform Jury Instructions for Criminal Cases Committee, the New Mexico Supreme Court, and perhaps the legislature. Under *State v. Wilson*, 116 N.M. 793, 867 P.2d 1175 (1994), the district court should consider the issue on remand.

There is a remarkable anomaly in our uniform jury instructions which could create substantial injustice on the retrial of this case. The anomaly is that the elements of the offense of voluntary manslaughter depend on whether or not the defendant is also charged with second degree murder. Con-

sider what happens if a defendant is tried on charges of both second degree murder and voluntary manslaughter, acquitted of second degree murder, and then retried on only voluntary manslaughter. Because of the change in the elements of the offense contained in the instructions, evidence that would sustain a voluntary manslaughter conviction at the first trial may be insufficient to sustain a voluntary manslaughter conviction on retrial. To be specific, assuming that the other elements of the offense are established, when the defendant is charged with both second degree murder and manslaughter at the first trial, the jury can, and should, convict of manslaughter if the jury (or, indeed, only one juror) believes that there is *a reasonable possibility* that the defendant was sufficiently provoked. To sustain a conviction of manslaughter on retrial, however, *all* jurors must be convinced *beyond a reasonable doubt* that the defendant was sufficiently provoked.

This result is a consequence of the following uniform jury instructions: If the defendant is charged with both second degree murder and voluntary manslaughter, the uniform jury instructions provide that the jury should be given SCRA 1986, 14–210 (entitled "Second degree murder; voluntary manslaughter lesser included offense; essential elements") and SCRA 1986, 14–220 (entitled "Voluntary manslaughter; lesser included offense"). U.J.I. 14–210 states:

For you to find the defendant guilty of second degree murder, the state must prove to your satisfaction beyond a reasonable doubt each of the following elements of the crime:

1. The defendant killed [name of victim];

2. The defendant knew that his acts created a strong probability of death or great bodily harm to [name of victim];

3. The defendant did not act as a result of sufficient provocation;

4. This happened in New Mexico on or about [date].

(Footnotes omitted.) U.J.I. 14–220 states:

For you to find the defendant guilty of voluntary manslaughter, the state must prove to your satisfaction beyond a reason-

able doubt each of the following elements of the crime:

1. The defendant killed [name of victim];

2. The defendant knew that his acts created a strong probability of death or great bodily harm to [name of victim];

3. This happened in New Mexico on or about [date].

The difference between second degree murder and voluntary manslaughter is sufficient provocation. In second degree murder the defendant kills without having been sufficiently provoked, that is, without sufficient provocation. In the case of voluntary manslaughter the defendant kills after having been sufficiently provoked, that is, as a result of sufficient provocation. Sufficient provocation reduces second degree murder to voluntary manslaughter.

(Footnotes omitted.) Under these instructions the defendant should be acquitted of second degree murder if the State fails to prove beyond a reasonable doubt that "[t]he defendant did not act as a result of sufficient provocation"; at the same time, the defendant can be convicted of voluntary manslaughter without the State bearing any burden of persuasion with respect to provocation.

On the other hand, the uniform jury instructions provide that if the defendant is charged only with voluntary manslaughter, the jury should be given SCRA 1986, 14–221, entitled "Voluntary manslaughter; no murder instruction; essential elements." U.J.I. 14–221 states:

For you to find the defendant guilty of voluntary manslaughter, the state must prove to your satisfaction beyond a reasonable doubt each of the following elements of the crime:

1. The defendant killed [name of victim];

2. The defendant knew that his acts created a strong probability of death or great bodily harm to [name of victim];

3. The defendant acted as a result of sufficient provocation;

4. This happened in New Mexico on or about [date].

(Footnotes omitted.) Under this instruction the jury must acquit the defendant of voluntary manslaughter unless the State proves beyond a reasonable doubt that "[t]he defendant acted as a result of sufficient provocation."

Consider the consequences to this case. At the first trial, apparently at least one juror refused to find Defendant guilty of second degree murder because he or she had a reasonable doubt concerning whether Defendant was sufficiently provoked. Hence, the jury did not return a verdict on the charge of second degree murder[1] and convicted on voluntary manslaughter. Now, however, we are ordering a retrial. Assuming that Defendant is tried only for voluntary manslaughter, the Uniform Jury Instructions require the State to convince all jurors beyond a reasonable doubt that Defendant was sufficiently provoked. This is a much greater burden than the State had at the first trial. Indeed, the same jurors who found Defendant guilty of voluntary manslaughter at the first trial could well decide to acquit at the second trial *on the very same evidence* because of the change in the State's burden of persuasion. Moreover, evidence of provocation that was sufficient to sustain a verdict of voluntary manslaughter at the first trial may as a matter of law be insufficient to sustain the verdict at the second trial because of the increased burden of persuasion. This result seems unjust and unjustifiable.

Perhaps this result is required by our Supreme Court's decision in *Smith v. State*, 89 N.M. 770, 558 P.2d 39 (1976). If so, that aspect of *Smith* is worth reconsideration by the Supreme Court and/or review by the legislature. I would note that the majority rule in other jurisdictions appears to be that on retrial the jury should (1) be instructed on both second degree murder and voluntary manslaughter but (2) be told that if it finds the defendant guilty of either offense, it should render a verdict only of voluntary manslaughter. *See* Milton Roberts, Annota-

tion, *Propriety of Manslaughter Conviction in Prosecution for Murder, Absent Proof of Necessary Elements of Manslaughter,* 19 A.L.R.4th 861, at §§ 11–12 (1983). This view finds support in the analysis of voluntary manslaughter in a thoughtful article by Dean Romero: Leo M. Romero, *Sufficiency of Provocation for Voluntary Manslaughter in New Mexico: Problems in Theory and Practice,* 12 N.M.L.Rev. 747, 747–61, 788–89 (1982). *See also* Charles W. Daniels & Teresa E. Storch, *Criminal Law,* 14 N.M.L.Rev. 89, 93–96 (1984).

---

**1.** It is not clear to me whether Defendant was acquitted of second degree murder. If he was not acquitted, he can be retried on that charge.

The jury would then be instructed as at the original trial, so there would be no inconsistency in the instructions at the two trials.