This memorandum opinion was not selected for publication in the New Mexico Appellate Reports. Please see Rule 12-405 NMRA for restrictions on the citation of unpublished memorandum opinions. Please also note that this electronic memorandum opinion may contain computer-generated errors or other deviations from the official paper version filed by the Court of Appeals and does not include the filing date.

## IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

**STATE OF NEW MEXICO,**

Plaintiff-Appellee,

v.                                       **NO. 33,201**

**ROBIN W.,**

Child-Appellant.

**APPEAL FROM THE DISTRICT COURT OF SAN JUAN COUNTY**
**Dalene Marsh, District Judge**

Gary K. King, Attorney General
Sri Mullis, Assistant Attorney General
Santa Fe, NM

for Appellee

Jorge A. Alvarado, Chief Public Defender
Santa Fe, NM

for Appellant

### MEMORANDUM OPINION

**ZAMORA, Judge**

{1}     Child appeals from a delinquency judgment and disposition entered by the children's court following her jury trial convictions for driving while under the influence of intoxicating liquor, driving without a license, and failure to maintain a traffic lane. This Court issued a calendar notice proposing summary reversal. The State filed a memorandum in opposition to this Court's notice of proposed disposition, which we have duly considered. Unpersuaded, we reverse and remand for a new trial.

{2}     In our calendar notice, we proposed to hold that considering the factors laid out in NMSA 1978, Section 32A-2-14(E) (2009), including the circumstances under which Child was questioned and the mental and physical condition of Child at the time of being questioned, the State did not satisfy its burden to prove by a preponderance of the evidence that Child knowingly and intelligently waived her *Miranda* rights. [CN 8] *See State v. Barrera*, 2001-NMSC-014, ¶ 22, 130 N.M. 227, 22 P.3d 1177 (holding that when a defendant moves to suppress "a statement made to police during a custodial interrogation, the [s]tate must demonstrate by a preponderance of evidence that a defendant knowingly, intelligently, and voluntarily waived his or her constitutional rights under *Miranda*"). Accordingly, we proposed to reverse the children's court's decision to deny Child's motion to suppress the statements she made to the arresting deputies. [CN 8] The State's memorandum in opposition does not point to any specific errors in fact or in law in our calendar notice.

*See Hennessy v. Duryea*, 1998-NMCA-036, ¶ 24, 124 N.M. 754, 955 P.2d 683 ("Our courts have repeatedly held that, in summary calendar cases, the burden is on the party opposing the proposed disposition to clearly point out errors in fact or law."). Instead, the State contests this Court's application of the law to the facts, arguing that the children's court did not err in finding that Child made a knowing, voluntary, and intelligent waiver because "[u]ncontroverted testimony established that Child expressly indicated that she understood her 'mini-*Miranda*' rights and agreed to speak with the deputies." [MIO 10]

{3}    In our calendar notice, we explained that "[i]n determining a knowing and intelligent waiver of rights, we ascertain whether [the child] was fully aware of the nature of the right [she] was waiving and the consequences of abandoning [her] right." *State v. Martinez*, 1999-NMSC-018, ¶ 21, 127 N.M. 207, 979 P.2d 718. [CN 5-6] In making our assessment, we noted that although it appeared that the children's court made no findings of fact with regard to Child's intoxication or any conclusions of law with regard to the effect of that intoxication on Child's ability to knowingly and intelligently waive her *Miranda* rights, the record is replete with testimony from both deputies regarding Child's intoxication level. [CN 6] In its memorandum in opposition, the State points out that "there is no per se rule that if a juvenile is intoxicated, that juvenile cannot make a knowing, intelligent, and voluntary waiver

. . . .” [MIO 9] We agree, but add that we have held that “voluntary intoxication is relevant to determining whether a waiver was knowing and intelligent” and that “extreme intoxication is inconsistent with a waiver of rights.” *State v. Young*, 1994-NMCA-061, ¶¶ 12, 14, 117 N.M. 688, 875 P.2d 1119.

{4}      In *State v. Bramlett*, this Court held that none of the statements the defendant made to the police officers were admissible because “it is difficult to reconcile [the officers’] conclusion of [the defendant’s] extreme intoxication with their opinion of his judgmental awareness of his rights and an intelligent waiver of them.” 1980-NMCA-042, ¶¶ 20, 22, 94 N.M. 263, 609 P.2d 345, *overruled on other grounds by Armijo v. State ex rel. Transp. Dep’t*, 1987-NMCA-052, 105 N.M. 771, 737 P.2d 552. The description of the defendant’s condition in *Bramlett* included “staggering, slurred speech, difficulty in walking, strong alcoholic smell[,] and the intoxication test level of .23[.]” *Id.* ¶ 20. The *Bramlett* Court also regarded the fact that the officers did not release the defendant because of concerns for his safety as important to its analysis. *Id.* ¶ 21. In the current case, terms such as “staggering” [RP 70], “stumbling” [RP 74], “very intoxicated” [RP 70], and “slurring her speech” [RP 70] were used to describe Child’s condition during the time frame in which she waived her *Miranda* rights. Additionally, Child had vomit on the front of her shirt [RP 70] and Deputy Roberts testified at trial that Child was not asked to perform field sobriety tests at the scene

"because she appeared to be so intoxicated." [RP 108] After waiving her rights, Child proceeded to vomit in the police car and to "pass[] out." [RP 74] At the substation, Child had a blood alcohol concentration (BAC) level of .18. [DS 3, RP 76]

{5} The State attempts to distinguish *Bramlett* from the current case by pointing out that the defendant's BAC level was .23 in *Bramlett* and that Child's breathalyzer test in this case "reflected a much lower reading of .18." [MIO 8] Further, the State argues that "there was no evidence that the defendant in *Bramlett* showed signs of improved demeanor during his interaction with police[,]" whereas in this case, "Child's demeanor markedly changed when she arrived to the police substation when she was no longer exposed to the cold weather." [MIO 8] We are not persuaded. As to the State's first contention, although Child's BAC was lower than that of the defendant in *Bramlett*, we note that the sixteen-year old Child in this case had a BAC level greater than twice the legal limit. *See* NMSA 1978, § 66-8-102(C)(1) (2010) (stating that it is unlawful to drive a vehicle with a BAC of .08 or more).

{6} It appears that the State's second contention—that Child's demeanor changed when she was no longer exposed to the cold weather—is aimed primarily at distinguishing the physical signs of intoxication exhibited by Child from those exhibited by the defendant in *Bramlett*. Indeed, throughout its memorandum in opposition the State attempts to characterize Child's "demeanor" as resulting from the

5

cold weather. In doing so, the State ignores or glosses over much of the testimony presented by the two deputies as to Child's intoxication level. Specifically, as laid out in our calendar notice, testimony from the two deputies established that while investigating the accident, they observed Child "staggering" or "stumbling" toward them. [DS 2; RP 70, 74] Child appeared to be "very intoxicated" and had vomit all over the front of her shirt. [DS 2; RP 70] Child's jacket was inside out. [MIO 2] Upon making contact, Deputy Adegite stated that Child had difficulty telling them her name. [DS 3; RP 74] After Deputy Roberts read Child her "mini-*Miranda*" warnings and Child agreed to speak with the deputies, Child admitted to driving the vehicle and tried to provide further detail. [DS 2; RP 70, 74] However, "Child was slurring her words to the point [that] she was incoherent and she [was] having a very difficult time answering questions." [DS 2-3] The deputies then placed Child in Deputy Adegite's vehicle, where she proceeded to vomit and "pass[] out." [DS 3; RP 74]

{7}     In light of the deputies' testimony that it was a cold morning [MIO 1; RP 71], the State contends that "Child spoke with slurred speech and shivered and shook from the cold weather, making it difficult for deputies to understand her at the scene of the crash. However, after Child warmed up in the police unit and at the police substation, she was easier to understand" [MIO 9]. To the extent that the State attempts to rely on the cold as the reason that Child was incomprehensible, the cold does not explain

6

Child wearing her jacket inside out, stumbling and staggering toward the deputies from down the road, vomiting on multiple occasions, and passing out in the back of the police car. These are signs of extreme intoxication that we must consider under *Young* and *Bramlett* and we are not convinced that Child's intoxication level at the time of the waiver was so different from that of the defendant in *Bramlett* as to distinguish the two cases.

{8}     The State contends that, even in light of the foregoing, "[u]ncontroverted testimony established that child expressly indicated that she understood her 'mini-*Miranda*' rights and agreed to speak with the deputies." [MIO 10] The testimony being referred to is that of the two arresting deputies. [RP 70, 74] Both deputies testified that after Deputy Roberts read the Child her rights, "she said she understood and agreed to speak . . . ." [RP 70, 74] We acknowledge the force of the State's argument, especially given the nature of this Court's review. *See Barrera*, 2001-NMSC-014, ¶ 23 ("On appeal, we review the [district] court's findings of fact for substantial evidence and review de novo the ultimate determination of whether a defendant validly waived his or her *Miranda* rights prior to police questioning."). However, like the situation in *Bramlett*, "it is difficult to reconcile" the detailed description by the deputies of Child's intoxication level at the scene of the accident with "their opinion of [her] judgmental awareness of [her] rights and an intelligent

7

waiver of them." 1980-NMCA-042, ¶ 20. This is particularly true in this case where Child was not asked to perform field sobriety tests at the scene "because she appeared to be so intoxicated." [RP 108] As we asked in *Bramlett*, "[i]s one's constitutional safety less worthy of protection than his physical safety?" *Id.* ¶ 21. Thus, "it is a contradiction of their own testimony and actions to believe that their opposing assessment of [her] ability to understand constitutes sufficient evidence that the statements and the waivers were given knowingly and voluntarily." *Id.* Accordingly, we conclude as a matter of law that "[s]uch conflicting evidence from the same witnesses offends the standards of fundamental fairness under the due process clause . . . and is unworthy of the degree of belief necessary to sustain a finding of voluntary waiver." *Id.* (internal citation omitted).

{9}     Finally, to the extent that the State depends on the conditions at the police substation and the "responsiveness" of Child during questioning there to establish a valid waiver [MIO 7-9], we are not persuaded. We note, though, that the children's court made a conclusion of law on a similar basis, specifically that Child was "aware of [the][nature of the right being abandoned and the consequences of the decision to abandon it]" because she "was in custody, had spent time sitting in [a] police car, was taken to [the] substation, . . . [was] in a holding cell before they questioned her again and gave her the intoxilizer test, that the Child was aware of her surroundings [and]

8

she knew what the consequences were." [MIO 5] However, it is clear that Child was not re-read her *Miranda* rights at the police station [DS 3] and that her waiver occurred at the scene of the accident, not at the police station [MIO 2]. Thus, the facts that "[d]eputies questioned Child under comfortable conditions" and that "Child answered questions and could be understood while at the police substation" [MIO 9] only serve to further underscore the conditions under which the waiver was sought and given in contrast to those of the follow-up questioning.

{10}     Therefore, for these reasons and those in our calendar notice, we hold that the State did not satisfy its burden to prove by a preponderance of the evidence that Child knowingly and intelligently waived her rights. *See State v. Spriggs-Gore*, 2003-NMCA-046, ¶ 8, 133 N.M. 479, 64 P.3d 506 ("Even though there may be some evidence to support a finding of voluntary waiver, this Court will reverse when convinced that the finding cannot be sustained by the preponderance of the evidence and the inferences therefrom."). Because we so hold, we need not address the other issue raised in Child's docketing statement.

{11}     Accordingly, we reverse the district court's decision not to suppress the statements made by Child and remand for a new trial.

{12}     **IT IS SO ORDERED.**

9

_____

**M. MONICA ZAMORA, Judge**

**WE CONCUR:**

_____

**TIMOTHY L. GARCIA, Judge**

_____

**J. MILES HANISEE, Judge**

10