This decision of the New Mexico Court of Appeals was not selected for publication in the New Mexico Appellate Reports. Refer to Rule 12-405 NMRA for restrictions on the citation of unpublished decisions. Electronic decisions may contain computer-generated errors or other deviations from the official version filed by the Court of Appeals.

**IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO**

**No. A-1-CA-36293**

**STATE OF NEW MEXICO,**

      Plaintiff-Appellee,

v.

**DAVID LECHUGA,**

      Defendant-Appellant.

**APPEAL FROM THE DISTRICT COURT OF LEA COUNTY**
**Mark T. Sanchez, District Judge**

Hector H. Balderas, Attorney General
Eran Sharon, Assistant Attorney General
Santa Fe, NM

for Appellee

Bennett J. Baur, Chief Public Defender
Allison H. Jaramillo, Assistant Appellate Defender
Santa Fe, NM

for Appellant

**MEMORANDUM OPINION**

**HANISEE, Chief Judge.**

**{1}** Defendant appeals from convictions for possession of a controlled substance and possession of drug paraphernalia. Defendant raises three issues on appeal: (1) that his confession, which amounted to a waiver of his *Miranda* rights, was not valid due to his intoxication and the district court therefore erred in admitting it; (2) that his counsel was ineffective by failing to move to suppress evidence arising from his initial stop, which he argues was unconstitutional; and (3) that the district court erred in admitting late-disclosed evidence and failing to sanction the State for the late disclosure. Having

reviewed the record and considered the parties' arguments on appeal, we affirm Defendant's convictions.

## DISCUSSION

### I.  Waiver of *Miranda* Rights

{2}    In determining whether a district court improperly denied a defendant's motion to suppress where a violation of a defendant's *Miranda* rights are alleged

> we accept the factual findings of the district court unless they are clearly erroneous, and view the evidence in the light most favorable to the district court's ruling. The ultimate determination of whether a valid waiver of [*Miranda*] rights has occurred, however, is a question of law which we review de novo.

*State v. Gutierrez*, 2011-NMSC-024, ¶ 7, 150 N.M. 232, 258 P.3d 1024 (internal quotation marks and citation omitted); *State v. Young*, 1994-NMCA-061, ¶ 12, 117 N.M. 688, 875 P.2d 1119 (providing that, in reviewing a *Miranda* waiver, "[t]he trial court's decision will not be disturbed on appeal if it is supported by substantial evidence, unless predicated on a mistake of law"). If a defendant's in-custody statements following a recitation of his *Miranda* rights were made knowingly and voluntarily, testimony regarding their content is admissible. *See State v. Bramlett*, 1980-NMCA-042, ¶ 19, 94 N.M. 263, 609 P.2d 345, *overruled on other grounds by Armijo v. State ex rel. Transp. Dep't*, 1987-NMCA-052, ¶ 8, 105 N.M. 771, 737 P.2d 552. However, we note that the State bears the burden of demonstrating to the district court that "a knowing, intelligent, and voluntary waiver of constitutional rights by a preponderance of the evidence." *Gutierrez*, 2011-NMSC-024, ¶ 7 (internal quotation marks and citations omitted); *see also Young*, 1994-NMCA-061, ¶ 12 ("When seeking to admit at trial a defendant's statement made in response to custodial interrogation, the State bears a heavy burden of proving that the defendant made an intelligent, knowing, and voluntary waiver of his rights." (internal quotation marks and citation omitted)).

{3}    Defendant contends that the district court erred in not suppressing his admission that he possessed heroin. Specifically, Defendant claims that (1) his waiver of *Miranda* rights was not knowing and intelligent; and (2) his statement was not voluntary. We address each argument in turn.

{4}    "Determination of whether a defendant validly waived his rights depends on the totality of the circumstances, including the defendant's mental and physical condition and his conduct." *Young*, 1994-NMCA-061, ¶ 12. "This Court has held that extreme intoxication is inconsistent with a waiver of rights." *Id.* In *Bramlett*, this Court suppressed statements by the defendant, concluding that, "[i]f [the] defendant was so intoxicated that in the judgment of these witnesses he could not function safely, it is a contradiction of their own testimony and actions to believe that their opposing assessment of his ability to understand constitutes sufficient evidence that the statements and the waivers

were given knowingly and voluntarily." 1980-NMCA-042, ¶ 21. The testimony offered in *Bramlett* was that, at the time of his waiver, the defendant, who had been drinking, was staggering, had slurred speech, had difficulty in walking, had a strong alcoholic smell, and an intoxication level of 0.23. *Id.* ¶ 20. The defendant in *Bramlett* was taken into custody due to his intoxication because his "mental and physical functioning [was] so substantially impaired . . . that he ha[d] become . . . unable to care for his own safety." *Id.* ¶ 21 (internal quotation marks and citation omitted) (referring to the statute that allows an intoxicated person to be restrained).

**{5}** In contrast, in *State v. Wyatt B.*, 2015-NMCA-110, 359 P.3d 165, this Court held that there was a knowing and intelligent waiver of *Miranda* despite a child's voluntary intoxication. In *Wyatt B.*, the child argued that his *Miranda* waiver was not valid because he "had difficulty opening the door of his vehicle"; the deputy testified that he "spoke in incomplete sentences due to his intoxication"; the child stated that he was "pretty buzzed," and that he "performed poorly on the field sobriety tests"; and the child had a breath alcohol level of 0.14 and 0.15. *Id.* ¶ 22. However, this Court looked to testimony by the deputy that the child had " 'a little bit of slurred speech' and blood shot and watery eyes," and that the child "seemed to understand his questions and was not disheveled, out of control, or mentally unbalanced." *Id.* ¶ 23. Moreover, this Court relied on there being "no evidence in the trial record support[ing] a conclusion that [the c]hild was unable to walk or could not care for his own safety." *Id.*

**{6}** In the present case, after reviewing the video and audio recordings made during and following Defendant's arrest, the district court found that Defendant followed the officers' instructions without argument or opposition, did not have to be touched to be prompted to do what they wanted, did not act irrationally, and exhibited calmness and compliance. Further, the district court found that Defendant's attention was where it should have been, he responded to people speaking, faced people he was speaking to, generally made sense, and answered the questions asked. The district court concluded that, based on the recordings, Defendant's "intelligence was somewhat impaired but it wasn't impaired to the degree that he couldn't make decisions."

**{7}** Our careful review of the video and audio recordings gives us confidence that the district court's factual findings are not clearly erroneous, and that Defendant's level of intoxication does not rise to the level of the extreme intoxication in *Bramlett*. Unlike the defendant in *Bramlett*, who was visibly drunk and had trouble speaking and walking, Defendant in this case appeared to have no such difficulties in responding to and interacting with the officers. Rather, this case is more in line with the level of intoxication in *Wyatt B.*, which supports the district court's decision that Defendant's waiver was knowing and intelligent.

**{8}** We also conclude that the district court did not err by concluding that Defendant's statement was voluntary. Defendant contends that the officer knew Defendant was intoxicated and "tried to downplay the importance of the right to remain silent, by telling [Defendant] he just needed the information for his report." Defendant cites to *State v. Madonda*, 2016-NMSC-022, 375 P.3d 424, in support of his argument that this

statement undermined the prior *Miranda* warning. However, *Madonda* involves an officer telling a defendant that "he would tell 'the same story' to officers without a lawyer as he would tell with a lawyer" *after the defendant had invoked his right to an attorney*. *Id.* ¶ 22. The statements the officer made to Defendant in this case do not rise to the same level. Finally, to the degree that Defendant contends his intoxication made him more susceptible to the officer's allegedly coercive act, Defendant does not sufficiently develop this argument. *See State v. Guerra*, 2012-NMSC-014, ¶ 21, 278 P.3d 1031 (providing that appellate courts are under no obligation to review unclear or undeveloped arguments). Based on the above, we conclude that Defendant has not demonstrated that his *Miranda* waiver was neither knowing and intelligent nor voluntary.

## II.    Ineffective Assistance of Counsel

**{9}**    Defendant argues that he received ineffective assistance of counsel when his attorney failed to move to suppress the initial search and seizure of Defendant. Defendant contends, for the first time on appeal, that he was wrongfully seized when the officer ordered him to stop and then handcuffed him. Although Defendant admits the officer may have initially acted in his community caretaking capacity, Defendant claims the officer then "unlawfully expanded the scope of the encounter without reasonable suspicion."

**{10}**    "To evaluate a claim of ineffective assistance of counsel, we apply the two-prong test in *Strickland v. Washington*, 466 U.S. 668, 687 . . . (1984)." *State v. Dylan J.*, 2009-NMCA-027, ¶ 36, 145 N.M.719, 204 P.3d 44. "That test places the burden on the defendant to show that his counsel's performance was deficient and that the deficient performance prejudiced his defense." *Id.* Defense counsel's performance is deficient if his or her conduct falls below that of a reasonably competent attorney. *State v. Grogan*, 2007-NMSC-039, ¶ 11, 142 N.M. 107, 163 P.3d 494. "[J]udicial review of the effectiveness of counsel's performance must be highly deferential, and courts should recognize that counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Lytle v. Jordan*, 2001-NMSC-016, ¶ 50, 130 N.M. 198, 22 P.3d 666 (internal quotation marks and citation omitted); *see State v. Roybal*, 2002-NMSC-027, ¶ 21, 132 N.M. 657, 54 P.3d 61 (stating that an appellate court presumes that counsel's performance "fell within a wide range of reasonable professional assistance" (internal quotation marks and citation omitted)). "We indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." *State v. Hunter*, 2006-NMSC-043, ¶ 13, 140 N.M. 406, 143 P.3d 168 (internal quotation marks and citation omitted).

**{11}**    "Evidence of an attorney's constitutionally ineffective performance and any resulting prejudice to a defendant's case is not usually sufficiently developed in the original trial record." *State v. Crocco*, 2014-NMSC-016, ¶ 13, 327 P.3d 1068. "For this reason, a claim of ineffective assistance of counsel should normally be addressed in a post-conviction habeas corpus proceeding, which may call for a new evidentiary hearing

to develop facts beyond the record rather than on direct appeal of a conviction as in the case before us." *Id.* (citation omitted). In *Crocco*, the defendant argued on appeal that it was ineffective assistance for his attorney to have failed to move to suppress a warrantless search of a home, not owned by him, where he was sleeping, after having accidentally wandered into another home nearby. *Id.* ¶ 1. On appeal, the New Mexico Supreme Court held that the ineffective assistance claim was more properly brought via habeas proceedings, due to the inadequacy of the record regarding the relationship between the defendant and the home's owner. *Id.* ¶ 24.

**{12}** We find *Crocco*'s emphasis on development of a factual record in habeas proceedings to be instructive, particularly as the constitutional search and seizure issues appear less clear-cut in the present case than they did in *Crocco*. "There are many reasons [the d]efendant's counsel may not have filed a suppression motion, including counsel's judgment that the motion would be groundless and unsuccessful." *Id.* ¶ 15. We therefore conclude that Defendant has failed to demonstrate a prima facie case of ineffective assistance based on the testimony presented at trial, but note that he may bring any such claims and develop the record regarding suppression issues through habeas corpus proceedings.

### III. The State's Disclosure of a Recording One Day Prior to Trial

**{13}** Defendant also contends on appeal that the district court erred in admitting a recorded statement of him confessing he possessed heroin that was disclosed one day before trial. Defendant argues that the State was required to disclose this piece of evidence, failed to do so, and that Defendant was prejudiced as a result, because a confession is particularly damning and requires a particular trial strategy to combat. Defendant argues that the district court erred by neither excluding the statement nor providing any lesser sanctions.

**{14}** "We review a district court's ruling on late discovery for abuse of discretion." *State v. Duarte*, 2007-NMCA-012, ¶ 14, 140 N.M. 930, 149 P.3d 1027. "An abuse of discretion occurs when the ruling is clearly against the logic and effect of the facts and circumstances of the case. We cannot say the [district] court abused its discretion by its ruling unless we can characterize it as clearly untenable or not justified by reason." *State v. Rojo*, 1999-NMSC-001, ¶ 41, 126 N.M. 438, 971 P.2d 829 (internal quotation marks and citation omitted).

> In considering whether late disclosure of evidence requires reversal, a reviewing court will consider the following factors: (1) whether the [s]tate breached some duty or intentionally deprived the defendant of evidence; (2) whether the improperly non-disclosed evidence was material; (3) whether the non-disclosure of the evidence prejudiced the defendant; and (4) whether the trial court cured the failure to timely disclose the evidence.

*State v. McDaniel*, 2004-NMCA-022, ¶ 8, 135 N.M. 84, 84 P.3d 701 (internal quotation marks and citation omitted).

**{15}** "The test for materiality . . . is whether there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Duarte*, 2007-NMCA-012, ¶ 15 (internal quotation marks and citation omitted). "As for determining whether the defendant has been prejudiced, . . . we look at whether the defense's case would have been improved by an earlier disclosure or how the defense would have prepared differently for trial." *Id.* (alteration, internal quotation marks, and citation omitted). Defendant bears the burden of proving that he was prejudiced by the evidence's late disclosure. *See State v. Ortega*, 2014-NMSC-017, ¶ 43, 327 P.3d 1076.

**{16}** We may assume under the circumstances that that the State breached its duty to timely disclose Defendant's recorded statement given that it was not produced until the day before trial. However, Defendant has failed to demonstrate that the late-disclosed evidence was material or that the late disclosure prejudiced his defense.

**{17}** Defendant contends that the recording was material because it related to two of the elements of his possession charge. However, this is not the test for materiality, which seeks to answer whether there is a reasonable probability that the proceeding would have been different had the evidence been disclosed. *See Duarte*, 2007-NMCA-012, ¶ 15. To that point, Defendant contends that the State *might* not have had sufficient evidence without the recording. However, Defendant's conclusion that the outcome *might* have been different does not persuade us that there is a *reasonable probability* that the outcome would be different. Therefore, Defendant has failed to demonstrate materiality.

**{18}** As to prejudice, Defendant contends that he "could have more effectively argued" against the officer's recitation of his statement alone rather than having to also contend with the recording. However, whether the jury would have been more likely to believe Defendant's contentions without the recording is speculative at best. *See McDaniel*, 2004-NMCA-022, ¶ 6 ("The prejudice must be more than speculative."). Furthermore, Defendant would have had knowledge of the contents of the recording as a participant in the recorded conversation. Defendant's knowledge undercuts his claim of prejudice. *See State v. Harper*, 2011-NMSC-044, ¶ 20, 150 N.M. 745, 266 P.3d 25 (stating that when "the defendant has knowledge of the contents of the unproduced evidence, determination of prejudice is more elusive"). Defendant, therefore, has also failed to demonstrate prejudice.

**{19}** As to the final factor, we note that the district court granted Defendant's request for additional leeway in his cross-examination of the officer. Assuming the district court was required to cure the State's failure to timely disclose the evidence despite Defendant's failure to meet his burden on materiality or prejudice, we believe the grant of additional leeway did so.

**{20}** For these reasons, we conclude that the district court did not abuse its discretion in admitting the recording.

**CONCLUSION**

**{21}** We affirm.

**{22}   IT IS SO ORDERED**.

**J. MILES HANISEE, Chief Judge**

**WE CONCUR:**

**KRISTINA BOGARDUS, Judge**

**ZACHARY A. IVES, Judge**